United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 22, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-50566
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NADIRA GASANOVA, SARDAR ELDAROVICH
GASANOV, also known as Sardar Gasanov,

Defendants-Appellants.

_____

Appeal from the United States District Court for
the Western District of Texas
_____

Before KING, Chief Judge, REAVLEY and STEWART, Circuit Judges.

REAVLEY, Circuit Judge:

Defendants-Appellants Sardar Gasanov and Nadira Gasnova, husband and wife,

were convicted of bringing illegal aliens into the United States, conspiracy to harbor

illegal aliens, and unlawful use of documents in furtherance of an alien smuggling

operation. We affirm.

Background

The Gasanovs illegally brought three Uzbekistani women to the United States to

dance in topless in El Paso, Texas.  Gasanov, a researcher at the University of Texas at El Paso, falsely represented that each woman was coming to the United States to conduct academic research.  He completed the necessary applications for the women to receive J-1 visas and had the women submit the applications to the United States embassy in Uzbekistan.  The women were issued the visas and Gasanova thereafter escorted them to the United States.

The women had been promised modeling careers after each raised $300,000 from topless dancing.  They lived with the Gasanovs and turned over all their earnings to them.  The Gasanovs deducted living expenses and made small outlays for personal items.  Between 1998 and 2001 the Gasanovs collected over $500,000 from the women, the vast majority of which the Gasanovs kept for themselves.  The Gasanovs also retained and refused to return two of the women's visas and  passports (along with other identifying documents).

The Gasanovs were each indicted on six counts in August 2001.  The indictment charged them with conspiracy to commit document fraud (count 1), conspiracy to harbor illegal aliens (count 2), bringing illegal aliens into the United States for purpose of financial gain (counts 3 through 5), and money laundering (count 6).  They were convicted of all charges except for money laundering and were each sentenced to 60 months' imprisonment.  In addition, the Gasanovs were ordered to make restitution and to forfeit a residence and two vehicles.

<u>Official Authorization</u>

In counts 3 through 5 the Gasanovs were each charged with violating 8 U.S.C. § 1324(a)(2)(B)(ii), which makes it a crime to bring an alien into the United States who "has not received prior official authorization" for the purpose of financial gain. Section 1324 provides, in relevant part:

> (a) Criminal penalties
>
> . . . .
>
>> (2) Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien . . . . shall
>
> . . .
>
> . . . .
>
>> (B) in the case of--
>
> . . . .
>
>> (ii) an offense done for the purpose of commercial advantage or private financial gain . . .
>
> . . . .
>
> be fined . . . and shall be imprisoned . . . .[1]

It is not disputed that the Gasanovs brought or helped to bring the three Uzbekistani women into the United States and that they did so for purpose of financial gain. However, the Gasanovs argue that there is no evidence that they did these things knowingly or in reckless disregard of the fact that the women had not received prior official authorization because, to the Gasanovs, the women's visas, issued by a proper government authority, were in fact official authorizations. Their position is that it is not a violation of § 1324(a)(2) to bring an alien to the United States known to be ineligible to enter so long as when brought the alien holds a visa issued by a proper government

_____

[1]     8 U.S.C. § 1324(a)(2)(B)(ii) (1999).

3

authority, even if they knew the alien's visa was obtained through fraud or artifice and, indeed, even if the they themselves perpetrated the deception necessary to get the visa.

Section 1324(a)(2) does not define the term official authorization, and no court of which we are aware has construed the statute to meet our question. Section 1324(a)(2) originated in the Immigration Reform and Control Act ("IRCA"),[2] the central purpose of which was to combat illegal immigration.[3] To construe official authorization as including a document the defendant knows to be mistakenly-issued or fraudulently-obtained would thwart this objective. It would permit a defendant to bring to the United States an alien who the defendant knows is ineligible to enter so long as the defendant succeeds in purloining a visa from an official source. Because this interpretation would contravene the fundamental purpose of the legislation through which § 1324(a)(2) was enacted we reject it.[4]

In defense of their interpretation, the Gasanovs suggest that in passing the IRCA Congress first and foremost wanted to proscribe bringing undocumented aliens into the United States, and not necessarily bringing aliens bearing fraudulently-obtained

---

[2]      Pub. L. No. 99-603, 100 Stat. 3359 (Nov. 6, 1986).

[3]      See H.R. REP. NO. 99-682(I), at 45 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5649.

[4]      See Church of the Holy Trinity v. United States, 143 U.S. 457, 459 (1892) ("[F]requently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.").

documents.  The Gasanovs acknowledge that there is no legislative history to support

their proposition.  In fact, if this had been Congress's intent, it would seem to fly in the

face of the more fundamental purpose of combating illegal immigration generally.  The

threat of aliens bearing fraudulently-obtained documents entering the United States

matches the threat of aliens with no documents.  Moreover, in a different context, we note

that Congress made it clear that simply being presented with an official-looking document

will not absolve an employer of responsibility for hiring an unauthorized alien.[5]  The

critical inquiry in applying that section of the IRCA is whether the employer knows the

alien's entry is unauthorized, irrespective of the documents.[6]

The Gasanovs quarrel with an isolated statement of the court in instructing the

jury, saying that "bringing aliens who are not admissible into the United States is a

violation of Title 8, United States Code, section 1324, even if the aliens have the

documents for entry."  This is incorrect, but the Gasanovs concede that they knew the

women were inadmissible, and, as we interpret § 1324(a)(2), to concede knowledge of

inadmissibility is to concede knowledge of lack of official authorization.  The instruction

was harmless.

Forfeiture

---

[5]     The IRCA defines "unauthorized alien" as an alien that is either not "(A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General."  IRCA § 101(a)(1), 100 Stat. at 3368 (codified as amended at 8 U.S.C. § 1324a(h)(3)).

[6]     See H.R. REP. NO. 99-682(I), at 57, 1986 U.S.C.C.A.N. at 5661.

5

Upon their convictions for conspiracy to violate 18 U.S.C. § 1546 (count 1), of conspiracy under 8 U.S.C. § 1324(a)(1)(A)(v)(I) (count 2), and for violation of 8 U.S.C. § 1324(a)(2)(B)(ii) (counts 3 through 5), the Gasanovs were required to forfeit all property connected with the commission of those offenses.[7] The Gasanovs contend that the district court applied the wrong burden of proof in the forfeiture proceeding, requiring only that the government prove by a preponderance of the evidence that the property at issue was connected with the described offenses. The Gasanovs did not raise this point in the forfeiture proceeding, and, as a result, we will review the district court's determination of the applicable burden of proof for plain error only.[8]

This court has not determined the correct burden of proof in forfeiture proceedings.[9] Forfeiture is a form of punishment,[10] and forfeiture proceedings occur following an adjudication of guilt on a substantive offense.[11] In past decisions, this court recognized that proof greater than a mere preponderance of the evidence may be required when the "finding of a particular fact relevant to sentencing dramatically alters the

---

[7] See 18 U.S.C. § 982(a)(6)(A)(ii) (2000 & Supp. 2003). Section 274(a) of the Immigration and Nationality Act, included in § 982(a)(6)(A), is codified at 8 U.S.C. § 1324(a).

[8] See United States v. Medina-Anicacio, 325 F.3d 638, 643 (5th Cir. 2003).

[9] In United States v. Cauble, 706 F.2d 1322, 1347-48 (5th Cir. 1983), we mentioned that the district court applied a reasonable-doubt standard in a RICO forfeiture action, but we did not hold or even opine that the reasonable-doubt standard was the correct one in that particular case or in forfeiture proceedings generally.

[10] See Austin v. United States, 509 U.S. 602, 618 (1993).

[11] See FED. R. CRIM. P. 32.2(b)(1).

6

sentencing options of the court to the disadvantage of the defendant."[12]  However, in

Apprendi v. New Jersey,[13] the Supreme Court held that only those facts that expose the

defendant to punishment beyond the statutory maximum of the charged offense are

subject to a heightened evidentiary standard.  As noted above, forfeiture of all property

connected with the charged offenses in this case is prescribed in the statutes proscribing

the offenses themselves.  We therefore join all other circuit courts of appeals to consider

the question and conclude that statutorily-prescribed forfeiture is warranted upon a

showing of a preponderance of the evidence.[14]  The Gasanovs do not contest the

sufficiency of the evidence under a preponderance-of-the-evidence standard.  We thus

discern no error in the district court ordering forfeiture in this case.

By an accompanying unpublished order we reject the other points of error.

AFFIRMED.

---

[12]     See, e.g., United States v. Mergerson, 4 F.3d 337, 343 (5th Cir. 1993).

[13]     530 U.S. 466, 490 (2000).

[14]     See United States v. Najjar, 300 F.3d 466, 485-86 (4th Cir. 2002); United States v. Vera, 278 F.3d 672, 672-73 (7th Cir. 2002); United States v. Cabeza, 258 F.3d 1256, 1257-58 (11th Cir. 2001); United States v. Corrado, 227 F.3d 543, 550-51 (6th Cir. 2000).