United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 20, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 04-30412
c/w 04-30414

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

COREY JULUKE,

Defendant-Appellant.

---

Appeals from the United States District Court
For the Eastern District of Louisiana

---

Before DAVIS, JONES, and GARZA, Circuit Judges.

PER CURIAM:

Corey Juluke appeals the ordered forfeiture of his home, as well as weapons, jewelry and cash,

in connection with his conviction for three violations of the federal Controlled Substances Act, 21

U.S.C. §§ 801-971. He argues that the Government failed to demonstrate a sufficient nexus between

those assets and his drug offenses. Juluke also appeals a sentencing enhancement based on weapons

possession and seeks resentencing in light of *United States v. Booker*, 125 S.Ct. 738 (2005).

Government agents obtained a search warrant for Juluke's home after he sold heroin to an informant. Before executing the warrant, agents observed Juluke and his two children leaving the home in his car. When the agents attempted to stop Juluke, he fled, throwing drugs out of the car window. Agents recovered approximately an ounce of heroin, but estimated that the total was more, one bag of heroin having exploded upon hitting an agent's car.

Without a plea agreement, Juluke pleaded guilty to three charges: (1) conspiracy to distribute and possess with intent to distribute between 100 and 300 grams of heroin; (2) possession of less than 100 grams of heroin with intent to distribute within 1,000 feet of an elementary school; and (3) possession of less than 100 grams of heroin with intent to distribute. In his stipulated factual basis, Juluke admitted to receiving shipments of heroin totaling between 100 and 300 grams between November 2002 and January 2003; to distributing an additional 55.5 grams within 1,000 feet of a school on March 27, 2003; and to possessing with intent to distribute 25 grams of heroin at the time of his arrest on July 22, 2003. Pursuant to 21 U.S.C. § 853(a), the Government sought forfeiture of the following items: (1) Juluke's home; (2) three loaded handguns, one found in the master bedroom closet, one in a bathroom closet, and one in Juluke's wife's car; (3) $20,575 in cash, most of it found in the couple's attic; (4) $14,405.06 in the couple's joint bank account; and (5) $75,575 in jewelry.

The Government produced testimony from a financial analyst, Elisa Blackwell, that she had reviewed tax and banking records for Juluke and his wife Kelly for the years 1999 through 2003 and concluded that the Julukes had income that could not be attributed to legitimate sources. Juluke had not reported any income to the Internal Revenue Service for 1999, 2001, or 2002. Kelly Juluke had not reported more than $23,000 in income for any year between 1999 and 2002. Blackwell noted

that Kelly Juluke's reported income would barely have covered the couple's $1783 mortgage. Reviewing the Julukes' bank transactions, Blackwell identified $96,249.00 in income from unknown sources for 2000, $76,603.00 for 2001, $ 67,952.00 for 2002, and $47,505.00 for 2003. The court also heard testimony that Juluke visited several casinos, most frequently Harrah's. Blackwell testified that, based on her review, Juluke lost $54,900 at Harrah's over the preceding four years. The defense introduced evidence that, approximately two weeks before his arrest, Juluke had won $24,000 at another casino, Bally's, and deposited $20,000 in to the couple's joint account a few days later. The defense also introduced evidence that Juluke won money from other casinos.

The court ordered the forfeiture of all the identified property except the handgun found in Kelly Juluke's car. At sentencing, the court imposed a two point enhancement for possession of firearms in connection with narcotics and sentenced Juluke to 151 months imprisonment, the maximum sentence under the applicable Guidelines range. Juluke appealed.

II

This court reviews "the district court's findings of fact under the clearly erroneous standard, and the question of whether those facts constitute legally proper forfeiture *de novo*." *United States v. Marmolejo*, 89 F.3d 1185, 1197 (5th Cir. 1996). In relevant part, the criminal forfeiture statute provides that any person convicted of a qualifying violation shall forfeit "[a]ny property constituting, or derived from any proceeds the person obtained, directly or indirectly, as the result of such violation" and "[a]ny of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation." 21 U.S.C. §§ 853(a)(1), (2). The Government must establish the requisite nexus between the property and the offense by a preponderance of the evidence. FED. R. CRIM. P. 32.2(b)(1); *United States v. Gasanova*, 332 F.3d

297, 300-01 (5th Cir. 2003). It can create a rebuttable presumption that property is subject to forfeiture if it establishes by a preponderance of the evidence that "such property was acquired by such person during the period of the violation . . . or within a reasonable time after such period" and that "there was no likely source for such property other than the violation." 21 U.S.C. § 853(d).

Juluke concedes that the heroin with which he was arrested was on his property, but claims he never took it in to the house and that it was stored in his car, parked in the driveway, for only a brief period. The district court found, based on the "totality of circumstances," that Juluke's residence was used to facilitate his crimes. The court reasoned that, even if the drugs were only kept in the car in the driveway rather than in the home itself, the property facilitated Juluke's drug activities. Citing the amount of drugs involved, the court rejected Juluke's claim that heroin's presence on the property was merely incidental.

We agree with the district court that storage of narcotics on the defendant's property, even if not in the house itself, may support a holding that the property facilitated the charged crime for purposes of § 853(a). *See United States v. Littlefield*, 821 F.2d 1365, 1367 (9th Cir. 1987) ("By specifying that property is subject to forfeiture if it was used 'in any manner or part' to commit or facilitate a drug offense, Congress plainly provided for forfeiture of property even where only a portion of it was used for the prohibited purposes."). Further, we hold that the district court could reasonably conclude, based on the presence of heroin on the property and the presence in the home of loaded weapons and large amounts of unexplained cash, that Juluke used the property as a place to store and protect narcotics (and proceeds thereof), including the heroin with which he was arrested, thereby facilitating or intending to facilitate his illegal activity. *See United States v. Premises Known as 3639-2nd St. N.W., Minneapolis, Minn.*, 869 F.2d 1093, 1096 (8th Cir. 1989)

("The term 'facilitate,' . . . has been interpreted to encompass activity making the prohibited conduct less difficult or more or less free from obstruction or hindrance.) (internal citation and quotation omitted); *cf. United States v. Plescia*, 48 F.3d 1452, 1462 (7th Cir. 1995) (affirming forfeiture of the defendant's home on the basis that he had received a call at the home to arrange a drug transaction). Thus, we hold that the district court did not err in ordering the forfeiture of Juluke's home.

Juluke also appeals the ordered forfeiture of the $20,575 found in his home, and $14,405.06 in the couple's bank account. The record establishes that during the period of drug activity at issue the Julukes' bank deposits significantly exceeded their known legitimate income, strongly suggesting that Juluke used the account to deposit the proceeds of drug sales. The storage of thousands of dollars in the couple's home, most of it hidden in the attic, also suggests that the money was proceeds of Juluke's drug activity. The Government introduced evidence that Juluke would have grossed at least $80,357 from the sale of the 250 grams of heroin for which Juluke pled guilty to conspiracy to distribute and possess with intent to distribute. The court reasoned that the large amount of cash, along with the couple's extravagant spending and limited legitimate income, were sufficient to establish by a preponderance of the evidence that the money in the couple's home and bank account was proceeds of Juluke's drug activity. While acknowledging that some of the money in the account could have come from legitimate sources, the court concluded that any legitimate income in the account served to facilitate Juluke's illegal activity. The court also suggested that Juluke's gambling was essentially a mechanism to launder his drug money rather than a separate source of untainted income. After reviewing the record, we hold that, for essentially the reasons articulated by the district court, the court did not clearly err in finding that the money in the couple's home and bank account was proceeds of Juluke's crimes.

Juluke also claims that the Government failed to demonstrate a sufficient nexus between the offenses for which he was convicted and the jewelry ordered forfeited. The district court concluded that, given the couple's limited legitimate income, the jewelry found in their home must have purchased with proceeds of Juluke's illegal activities. Juluke argues that it is not sufficient under § 853(a)(1) to demonstrate by a preponderance of the evidence the jewelry was proceeds of drug violations. Rather, he contends, the Government must demonstrate by a preponderance of the evidence that the jewelry pieces are the proceeds of the particular actions of which he was convicted.

Juluke cites no cases directly addressing the validity of this reading, but his interpretation is supported by several considerations. First, the language of § 853(a)(1) requires that proceeds be of "such violation," referring to the violation of which the defendant was convicted. Second, requiring a connection between the property and the particular criminal offense at issue is consistent with the criminal nature of § 853. Unlike the rationale of the civil forfeiture provision, the policy rationale behind the criminal forfeiture provision is to punish the convicted))the forfeiture is part of the sentence. *See Libretti v. United States*, 516 U.S. 29, 39 (1995). Thus, it is inconsistent with the purpose of the statute to permit forfeiture not tied to the specific criminal acts of which the defendant was convicted. Finally, § 853(d)(2) appears inconsistent with the Government's implicit claim that it can satisfy its burden under § 853(a)(1) merely by demonstrating that Juluke had no other source of legitimate income. Under § 853(d)(2), the Government may establish a rebuttable presumption that property is subject to forfeiture if the property was (1) acquired during the period of the violation *and* (2) that there is no other likely source for such property. 28 U.S.C. § 853(d)(2). The Government's contention in this case is essentially that it is entitled to forfeiture even though its evidence established only the second prong, absence of sufficient legitimate income. Acceptance of

this argument would render § 853(d)(2) superfluous because the Government would need never demonstrate more than an absence of sufficient legitimate income. Because the Government produced no evidence from which the district court could infer that the jewelry seized from the Julukes' home was proceeds of the drug activity that formed the basis for Juluke's convictions, we hold that the district court erred in ordering the forfeiture of the jewelry.

Finally, the court found that the Government had demonstrated a sufficient connection between the two handguns found in Juluke's home and his illegal activities. While Juluke raised this issue in his initial brief, his reply brief appears to concede waiving in district court any objection to the forfeiture of the weapons, seeking only to maintain his objection to the two level sentencing increase based on possession of a firearm, discussed *infra*. We therefore do not reach this issue.

III

Juluke argues that the district court erred in increasing his sentence by two levels pursuant to U.S.S.G. § 2D1.1(b)(1), which provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." The Government has the burden of demonstrating "by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Cooper*, 274 F.3d 230, 245 (5th Cir. 2001) (quotations omitted). To satisfy this burden, "the [G]overnment must show that the weapon was found in the same location where the drugs or drug paraphernalia [were] stored or where part of the transaction occurred." *Id*. (internal quotations omitted). The "adjustment should be applied if the weapon was present, unless the defendant establishes that it was clearly improbable that the weapon was connected with the offense." *United States v. Jacquinot*, 258 F.3d 423, 430 (5th Cir. 2001) (citing § 2D1.1(b)(1), cmt. 3). The district court's determination "is a factual finding and thus

reviewed for clear error." *Cooper,* 274 F.3d at 245.

The loaded weapons at issue were found in the same home as the cash, and one was found in the same closet as a portion of the cash. The weapons were also on the same property that the district court found Juluke had used to store heroin. Given these facts, we cannot say that it is "clearly improbable that the weapon was connected with the offense." *Jacquinot*, 258 F.3d at 430; *see also United States v. Noble*, 246 F.3d 946, 954 (7th Cir. 2001) (upholding sentencing enhancement were drug proceeds were found in bedroom and weapon in bedroom closet); *United States v. Johnson*, 227 F.3d 807, 814 (7th Cir. 2000).

IV

Juluke contends that his sentence under the then-mandatory Sentencing Guidelines violates the Sixth Amendment and that he should be resentenced in light of *Booker*. Juluke concedes that he raised no applicable objection before the district court. "An appellate court may not correct an error the defendant failed to raise in the district court unless there is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Mares*, 402 F.3d 511, 520 (5th Cir.) (internal quotations omitted), *petition for cert. filed*, No. 04-9517 (Mar. 31, 2005). Juluke points to nothing in the record demonstrating "that the sentencing judge) ) sentencing under an advisory scheme rather than a mandatory one) ) would have reached a significantly different result." *Id.* at 521. Thus, he has not satisfied the third prong of the plain error test.

V

For the forgoing reasons, we AFFIRM in part, REVERSE in part, and REMAND with instructions that the district court amend the forfeiture to exclude the seized jewelry.

JONES, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from that portion of the majority opinion that affirms the forfeiture of Juluke's house. The evidence is insufficient to determine that Juluke's home was "used . . . in any manner or part . . . to facilitate the commission of such violation[s]" of which he was convicted. 21 U.S.C. § 853(a)(2). The majority's result goes further than any other I have found allowing the forfeiture of a home with so little demonstrated connection to the offenses of conviction.

The record indicates only that Corey Juluke received a shipment of heroin, placed the heroin in his car, and ultimately parked his car containing the heroin in his open driveway. While fleeing law enforcement, Juluke disposed of the heroin by throwing it out the car window. There is no evidence that Juluke ever brought the heroin into his home, and it is unknown how long he had been in possession of the heroin. Based on this evidence alone, the majority holds that the Juluke home may be ordered forfeited.

In order for property to be eligible for forfeiture under 21 U.S.C. § 853, the government must first demonstrate a requisite nexus between the property to be forfeited and the offense charged. "Incidental or fortuitous connection [of the property] to the drug business" is not sufficient to warrant its forfeiture. United States v. 916 Douglas Ave., 903 F.2d 490, 493 (7th Cir. 1989) (construing identical language in civil forfeiture statute, 21 U.S.C. § 881(a)(7).). See also FED. R. CRIM. PROC. 32.2(b)(i). The cases cited by the majority all concern situations where the property to be forfeited was the situs of the charged drug crime. See United States v. Plescia, 48 F.3d 1452, 1462 (7th Cir. 1995) (forfeiture of home proper where home phones used to conduct drug business in furtherance of conspiracy); United States v. 3639 - 2nd St., N.E., 869 F.2d 1093, 1095-97 (8th Cir.

-9-

1989) (forfeiture of home proper where drugs were processed and sold therein); <u>United States v. Littlefield</u>, 821 F.2d 1365, 1367 (9th Cir. 1987) (forfeiture of farm proper where marijuana cultivated on land). The homes in all the aforementioned cases clearly played at least some role in the crimes committed by their owners, so finding the requisite nexus was not a difficult task.

The instant case does not compare favorably with the cases cited by the majority. Indeed, the Juluke home does not appear to have played any role in Juluke's crimes. No drugs were found anywhere in the Juluke residence after law enforcement searched his property. The search turned up no drug paraphernalia that might suggest Juluke had been processing heroin for distribution. Finally, the Government presented no evidence that Juluke had sold drugs from his home, held drug-related meetings at his home, or used his home phones to conduct his business.

As there is no evidence that the Juluke home was the situs of any of the crimes of which he was convicted, the district court and majority base forfeiture on the fact that Juluke "stored" heroin on his property. Even assuming the heroin never left Juluke's car, the district court found that the Juluke home had facilitated Juluke's crimes, as the location of the home in a moderately affluent neighborhood enabled him to conceal his crimes. This theory of concealment strains credulity. In <u>United States v. Smith</u>, 966 F.2d 1045 (6th Cir. 1992), a case cited by the Government, forfeiture of a tract of land was held to be proper where property was used to "<u>actually physically conceal</u>" the crimes on the owner's adjacent land. <u>Id.</u> at 1055 (emphasis in original); <u>see also</u> <u>Plescia</u>, 48 F.3d at 1462 (phone calls made within home helped to conceal crime). Again, the property in these cases played a role in the commission of the underlying crimes, and drug crimes took place on the property to be forfeited. By comparison, it is difficult to see how Juluke's open driveway concealed his crimes. Juluke did not place his car in a covered garage, behind a secure fence, or even in a wooded area.

That Juluke lived in an upper middle class neighborhood is of little import here, given that the car was parked away from the home in plain view.

In a criminal forfeiture case for drug crimes, it is not "[t]he quantity" of drugs involved but "the quality of the relationship between the property and the crime" that is at issue. 3629-2nd St., N.E., 869 F.2d at 1098 (Arnold, J., concurring). Further, to "facilitate" means "to make easier or less difficult." Webster's Third New Int'l Dict. The quality of the relationship between property and crime in this case is weak. There is nothing in the record to suggest that Juluke's illegal activities were "made easier or less difficult" by his having a car parked in his driveway at home. The drugs were no more concealed or contiguous to him than they would have been in a car parked on the street. The broad facilitation theory advanced today extends an already broad statute beyond the scope of its language. There is no evidence to suggest that Juluke's decision to park his car in his driveway on the day of his arrest is anything other than incidental or fortuitous. Forfeiture of Juluke's home is not warranted by the facts on record, and I therefore respectfully dissent.