# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 16, 2011

No. 09-11047

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SERGIO DIAZ,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 03:08-cr-00267

Before BARKSDALE, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal presents three issues regarding defendant Sergio Diaz's sentence following his guilty plea to conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846.  Diaz stipulated that he had conspired in a large drug trafficking organization by allowing the organization to use his commercial property as a staging area to load and unload money and drugs from truck containers, which would be used to store and transport the contraband.  He also acknowledged that he accompanied co-conspirators in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-11047

shopping for truck containers like those used to store the contraband. Over Diaz's objection, the district court ordered forfeited the entire commercial property, which consisted of four tracts of land. The district court also refused Diaz's request for a mitigating role adjustment. We AFFIRM both of these decisions. In its written judgment of sentence, the district court also included as a condition of Diaz's supervised release that Diaz register as a sex offender. Because the court had not included that condition in its oral pronouncement of sentence, and none of the offenses related to Diaz's conviction included a sexual offense, we VACATE his sentence in part and REMAND for re-sentencing without this condition.

## BACKGROUND AND FACTS

Sergio Diaz pleaded guilty to conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. The charges arose from Diaz's involvement with the Rodriguez drug trafficking organization ("Rodriguez DTO"), a large drug trafficking organization operating in Dallas, Texas, which moved drugs from Mexico to the United States and sent money back to Mexico. Diaz's participation consisted primarily of renting his commercial property to the organization to park large tractor trailers in order to load and unload money and drugs. Diaz acknowledged that he was "trying to provide a storage facility for the [Rodriguez DTO] conspiracy," and that "he was aware that the [Rodriguez DTO's] tractor-trailers that went through his business had drugs and money in them." Diaz also acknowledged that "he was personal friends with . . . co-conspirator Hector Rodriguez," who ran the Rodriguez DTO, and "that he got drugs for personal use from Mr. Rodriguez and he also was involved in some transactions on behalf of friends." In addition, Diaz accompanied other members of the conspiracy in shopping for tractor trailers to use in the conspiracy, and

2

No. 09-11047

offered to construct structures on his property to further assist the conspiracy's furtive operations.

The Presentence Report ("PSR") held Diaz accountable for 331.7 kilograms of cocaine because the government seized $6,633,930 in drug trafficking proceeds from tractor trailers leaving Diaz's property, and the PSR estimated a cash value of $20,000 per kilogram of cocaine. Diaz admitted that the amount of drugs that he was involved in was greater than 5 kilograms, and while he disavowed responsibility for "the tremendous amounts of cocaine that went through . . . his place of business," he acknowledged that "he fully underst[ood] that this was a large-scale . . . drug conspiracy that involved lots of drugs and a lot of money." Diaz stipulated, in the Factual Resume supporting his plea, that:

> [D]uring the time of his participation in the conspiracy[,] . . . [Diaz] allowed two parcels of his property to be used to stage vehicles that were being used to move cocaine. Diaz knew these two parcels were being used for this illegal purpose. However, Diaz did not know the extent of the conspiracy and the amount of drugs that was being moved by other individuals in the conspiracy.

Pursuant to 21 U.S.C. § 853(a), the Government sought forfeiture of these two parcels and two contiguous parcels of Diaz's land, which the Government argued were all part of the same "property" used to facilitate the drug conspiracy. The four tracts are numbered, from north to south, one, four, three, two.[1] Diaz conceded that the northern most tracts, one and four, were used during the conspiracy, but disputed the forfeiture of the southern tracts, two and three. He argued that the DTO's tractor trailers only ever occupied the northernmost two tracts and, at most, occasionally touched upon tract three while maneuvering to park or exit the property. In the district court, the Government and Diaz stipulated that Diaz obtained the tracts at the same time

---

[1] The addresses of the four parcels are, north to south, 3730, 3742, 3802, and 3806 Cotton Lane.

and in the same warranty deed, that the tracts are contiguous, and that they are identified as mentioned above. They also agreed that: In photographs, the four parcels appear as a single, undivided piece of real property; that no fences or walls divide them from each other; various vehicles have been and are parked on the parcels; various storage containers have been and are placed on the property; the gated entrance to the property stands on tract one, at 3730 Cotton Lane, but the sign near it states "3802 Cotton"; and that there are two structures on the southernmost end of the four tracts, a metal frame of a building and a roofed carport.

Diaz alleged other facts that he argued distinguished the tracts as separate units of property. He presented evidence that the tracts are taxed separately, and argued that he intended to use the property for two different business purposes: tracts one and four, on the north end, were to be used as a tractor trailer storage and repair area; and tracts three and two, on the south end were to be used to operate a commercial tire repair business. He claimed that the steel frame of a structure on the southern end of the four tracts was a building being erected to house the tire repair business. Diaz also introduced evidence of a site plan that he prepared showing his intended use of the property for these separate businesses.

The district court concluded that all four tracts were part of Diaz's "property" as defined in § 853(a), and, at sentencing, ordered all four tracts forfeited. Diaz objected to that decision.

Diaz also requested a downward adjustment in his offense level under § 3B1.2 of the Sentencing Guidelines, arguing that his role in the Rodriguez DTO was limited to a minimal or minor role, which the district court denied. As a result, the court assessed Diaz's offense level at 34, which provided a guidelines range of 151 to 188 months. Diaz objected to this calculation based upon his claim that he was entitled to a downward adjustment under § 3B1.2.

No. 09-11047

The district court sentenced Diaz to 151 months incarceration and a term of supervised release of 5 years. In its oral pronouncement of sentence, the court ordered Diaz to "comply with the standard terms and conditions for supervised release," and specified additional terms and conditions, which did not include registration as a sex offender. However, the court's written judgment of sentence included sex offender registration as a term of Diaz's supervised release.

Diaz appealed, alleging that the district court erred by: (1) ordering forfeited all four tracts of Diaz's property, (2) denying a mitigating role adjustment under § 3B1.2, and (3) including registration as a sex offender in the terms of Diaz's supervised release in the court's written judgment.

## DISCUSSION

### I.   Forfeiture of property

"This court reviews 'the district court's findings of fact under the clearly erroneous standard, and the question of whether those facts constitute legally proper forfeiture *de novo*.'" *United States v. Juluke*, 426 F.3d 323, 326 (5th Cir. 2005) (quoting *United States v. Marmolejo*, 89 F.3d 1185, 1197 (5th Cir. 1996)). For forfeiture under § 853(a), "[t]he Government must establish the requisite nexus between the property and the offense by a preponderance of the evidence." *Id.* (citing Fed. R. Crim. P. 32.2(b)(1); *United States v. Gasanova*, 332 F.3d 297, 300-01 (5th Cir. 2003)).

The criminal forfeiture statute at issue in this appeal, 21 U.S.C. § 853, provides, in relevant part:

(a) Property subject to criminal forfeiture
Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law-- . . .

5

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . . .

The district court held that "property subject to forfeiture under § 853(a) is defined by 'the instruments and documents that created the defendant's interest in the property,'" quoting from the Eighth Circuit's decision in *United States v. Bieri*, 21 F.3d 819, 824 (8th Cir. 1994). Accordingly, the court held that all four tracts of Diaz's property should be forfeited because they were all conveyed in the same deed.

The Government endorses this interpretation of "property" subject to seizure under § 853(a). In addition to *Bieri*, the Government also relies on decisions from the Sixth and Fourth Circuits that have adopted a similar interpretation of "property" subject to forfeiture under § 853(a). *See United States v. Smith*, 966 F.2d 1045, 1053 (6th Cir. 1992); *United States v. Reynolds*, 856 F.2d 675, 676-77 (4th Cir. 1988). Diaz contends that "property" under § 853(a) should be defined on a "case-by-case analysis" and relies on the Eleventh Circuit's decision in *United States v. 817 NE 29th Drive, Wilton Manors, Florida* (*Wilton Manors*), 175 F.3d 1304, 1308 (11th Cir. 1999). Diaz argues that the Eleventh Circuit's approach—which requires "examin[ation] [of] the character of the land on which the criminal activity took place . . . [in order to] determine whether all of the land sought by the Government can be considered to be of that same character," *id.* at 1308—is a better vehicle for attaining just results, because a per se rule that decides forfeiture based on the deed of conveyance is not only arbitrary, but is subject to manipulation by sophisticated drug dealers. Diaz argues that all four tracts should not be considered the same property under the Eleventh Circuit's approach because "[w]hile the property remains largely undeveloped (with the only development occurring on the southern tracts, where Diaz had begun constructing his tire

shop), the local land records distinguish among the four tracts in a way that would make it easy to forfeit two of the four tracts."

We need not decide whether to adopt the approach endorsed in *Bieri* and like cases, or the approach endorsed in *Wilton Manors*, because under either approach, all four tracts of Diaz's property are subject to forfeiture. It is undisputed that Diaz obtained all four tracts in a single deed of conveyance, and therefore, under *Bieri*, all four tracts are subject to forfeiture. *See* 21 F.3d at 824. The record also reveals that the four tracts were transferred at the same time and in the same deed; they were contiguous, united, and not demarcated by any boundaries; they were accessible through a single entryway, marked with a single street address; and the four tracts had an undifferentiated commercial character. Therefore, under *Wilton Manors*, all four tracts together constitute Diaz's "property" subject to forfeiture under § 853(a). *See* 175 F.3d at 1308. Diaz's contention that the local land records distinguish among the four tracts and tax them separately, as well as his subjective intentions for dividing the property into two separate business operations, do not alter the singular character of the property as it existed throughout the conspiracy and at the time of Diaz's arrest. *See United States v. Santoro*, 866 F.2d 1538, 1543 (4th Cir. 1989) ("The [owner's] subjective characterization of the property as two tracts cannot serve as the legal basis" for determining "property" under 28 U.S.C. § 881, a civil forfeiture statute analogous to § 853.). Therefore, we affirm the district court's determination that all four tracts together constitute Diaz's "property" subject to forfeiture under § 853(a).

## II.   Mitigating role adjustment

Whether a defendant is a minor or minimal participant is a factual determination reviewed for clear error. *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005); *see also* U.S.S.G. § 3B1.2 cmt. n.3(C). "A factual finding

No. 09-11047

is not clearly erroneous if it is plausible in light of the record read as a whole." *Villanueva*, 408 F.3d at 203.

We conclude that the district court did not clearly err in determining that Diaz was not entitled to a downward adjustment under § 3B1.2 since Diaz did not even qualify as a "minor participant," which is the lowest threshold for a downward adjustment under § 3B1.2.[2] "It is not enough that a defendant 'does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity.'" *Villanueva*, 408 F.3d at 203-04 (quoting *United States v. Miranda*, 248 F.3d 434, 446-47 (5th Cir. 2001)).

Diaz was held accountable for allowing the Rodriguez DTO to use his property to load and unload very large quantities of drugs and vast sums of money that was acquired from the Rodriguez DTO's operations. He also admitted to accompanying other members of the Rodriguez DTO to shop for tractor-trailers that would be used by the Rodriguez DTO. At sentencing, the district court made the following finding as well:

> In order for this very large drug conspiracy to work it had to have the ability to transport drugs to the United States and to return cash to Mexico. . . .
>
> In order for the conspiracy to operate someone had to be trusted to allow a piece of property, a facility like this, to be used for the transportation of drugs and money. Had Mr. Diaz not been trusted to allow his property to be used in this way this could not have occurred as it did. I mean, they would not have let him be the person who's property was used if they didn't trust him, which gives

---

[2] Section 3B1.2 of the Sentencing Guidelines provides:

Based on the defendant's role in the offense, decrease the offense level as follows:

    (a)    If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

    (b)    If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

No. 09-11047

me an indication of the nature of his conduct and his role in the offense.

In light of this record evidence, Diaz's role in the Rodriguez DTO, which involved an intimate involvement with the conspiracy and a demonstrated level of trust, was not peripheral to the advancement of the conspiracy. *See, e.g.*, *United States v. Giraldo-Lara*, 919 F.2d 19, 22 (5th Cir. 1990) (the defendant was not a minor participant where she "admitted that she had been involved on a daily basis in acquiring, transporting, and distributing cocaine and money over a period of about two years."); *United States v. Thomas*, 932 F.2d 1085, 1092 (5th Cir. 1991) ("Thomas' daily role in the conspiracy" as "only a go-between, and not a supervisor," "while less than the other defendants, was not minor."); *see also United States v. Mendoza-Oseguera*, No. 00-40322, 2001 WL 1013207, at *8 (5th Cir. Aug. 9, 2001) (The defendant "was given access to the stash house, something given only to trusted members of a drug trafficking organization. Further, as the only person in the house, he was in essence left to watch over a large amount of cocaine," over 220 kilograms of cocaine, which had a street value of up to $4.4 million, "for a significant period of time," over seven hours, "a role surely not peripheral to the advancement of the organization."). While Diaz contends that "there was an element of coercion in [his] participation in" the conspiracy—based on alleged threats by members of the Rodriguez DTO that Diaz's brother, who allegedly was indebted to the Rodriguez DTO, would be killed if Diaz did not allow the Rodriguez DTO to use his property—he does not argue that he would not have participated absent that alleged coercion.

Therefore, the district court did not clearly err in not granting Diaz's request for a downward adjustment under § 3B1.2.

No. 09-11047

### III.   Sex offender registration condition

The district court's written judgment, but not the court's oral pronouncement of sentence, includes as a condition of supervised release that Diaz register as a sex offender.  The government concedes error in the district court's inclusion of sex offender registration as a condition of Diaz's post-release supervision.  Because the sex offender registration requirement imposes "a more burdensome requirement" on Diaz's conditional release, and "the written judgment *conflicts* with the sentence pronounced at sentencing, that pronouncement controls." *United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006); *see also United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001); *United States v. De La Pena-Juarez*, 214 F.3d 594, 601 (5th Cir. 2000).  Therefore, we must remand to the district court to strike from its written judgment of sentence the condition of supervised release that Diaz register as a sex offender.

### CONCLUSION

For the foregoing reasons, Diaz's sentence is AFFIRMED in part and VACATED in part.  This matter is REMANDED to conform the written judgment of the district court consistent with this opinion.