## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10401

United States Court of Appeals
Fifth Circuit

**FILED**
April 23, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

ANTHONY MORENO,

> Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:18-CR-293-7

Before BARKSDALE, HIGGINSON, and DUNCAN, Circuit Judges.

PER CURIAM:*

Anthony Moreno's challenge to his sentence for his guilty-plea conviction for conspiracy to possess, with intent to distribute, methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846,  primarily concerns the district court's imposing enhancements under the following three subsections of Sentencing Guideline § 2D1.1:  (b)(1) (possession of dangerous weapon in connection with drug offense); (b)(5) (offense involved importation

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 19-10401

of methamphetamine); and (b)(12) (maintaining premises for purpose of manufacturing or distributing controlled substance).  AFFIRMED.

I.

In October 2015, the DEA began investigating the Ashmore Drug Trafficking Organization (Ashmore), which imported and distributed heroin, methamphetamine, and cocaine from Mexico.  The investigation identified Moreno as one distributor of the imported drugs.

On 28 September 2018, officers executed a federal arrest warrant at Moreno's residence.  After hearing movement in the home, but receiving no response, officers observed Moreno walk to his vehicle and drive away.  Officers conducted a felony traffic stop and a safety sweep of the vehicle, finding a Glock 19X firearm loaded with 19 rounds.

After the officers advised Moreno he was under arrest, he consented to a search of his home and stated:  "What's all at the house is mine"; and  "a couple of pounds of weed" were in the residence.  After signing a consent-to-search form, he advised officers they would also find several firearms in the home.  And, after being read, and waiving, his *Miranda* rights, Moreno added they might find a "couple of ounces of ice" (crystalized methamphetamine).  At the residence, officers found multiple vacuum-sealed bags of marihuana, multiple baggies of cocaine, and two baggies of crystalized methamphetamine, in addition to three pistols (two loaded) and three rifles.

In a post-arrest interview, Moreno stated he generally procured, from Ashmore, between three and four kilograms of methamphetamine per month.  When asked the source of the methamphetamine, Moreno stated he knew it came from Mexico because "the little Mexican dude was bringing it and dropping it off".  Regarding distribution of methamphetamine, Moreno stated he "busted down" the kilograms he received for his mainly ounce-level customers and was rarely home because he was always driving around making

2

No. 19-10401

deliveries.  Further, he stated the methamphetamine "moves too fast to keep any on hand", explaining it would be gone within a few days of his receiving it.

In response to the information filed by the Government, charging Moreno with conspiracy to possess, with intent to distribute, methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, Moreno waived indictment and pleaded guilty without a written plea agreement.  Moreno's presentence investigation report (PSR) held him accountable, under "relevant conduct", for, *inter alia*:  the above-referenced firearms; and 1,600 grams of marihuana and 77.98 grams of "ice" discovered during the 28 September search of his home.  Moreno did not contest these aspects of the PSR.

According to Moreno's PSR, his base offense level was 38.  The PSR added a total of six levels pursuant to enhancements under three subsections of Guideline § 2D1.1:  two levels per (b)(1) (possession of dangerous weapon in connection with drug offense); two per (b)(5) (offense involved importation of methamphetamine); and two per (b)(12) (maintaining premises for purpose of manufacturing or distributing controlled substance).  The PSR subtracted three levels for acceptance of responsibility, pursuant to Guideline § 3E.1, resulting in, *inter alia*, a recommended total-offense level of 41 and an advisory sentencing range of 324–405-months' imprisonment.

Moreno objected to, *inter alia*, each of the three enhancements; and the Government responded, including providing copies of the DEA's investigation notes.  The U.S. Probation Office prepared an addendum to the PSR, addressing each of Moreno's objections in turn.  Moreno objected to the addendum.

At sentencing, Moreno did not present evidence but did present his objections to, *inter alia*, the three enhancements.  The court overruled the objections and adopted the PSR and its addendum. The court varied downward and imposed a sentence of, *inter alia,* 300-months' imprisonment.

No. 19-10401

II.

Moreno challenges both the constitutionality of the Sentencing Guidelines generally and the district court's applying the enhancements under the three subsections of Guideline § 2D1.1:  (b)(1) (possession of dangerous weapon in connection with drug offense); (b)(5) (offense involved importation of methamphetamine); and (b)(12) (maintaining premises for purpose of manufacturing or distributing controlled substance).  Each challenge fails.

A.

Moreno contends for the first time on appeal that the Guidelines constitute an unconstitutional delegation of congressional power.  Although "[t]here is no bright-line rule for determining whether a matter was raised below[,] if a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court".  *United States v. Soza*, 874 F.3d 884, 889 (5th Cir. 2017) (alteration, internal quotation marks, and citations omitted).  Because Moreno did not raise this matter in district court, his contentions regarding the constitutionality of the Guidelines are, arguably, waived.

Even assuming the issue is not waived, because Moreno did not raise it in district court, review is only for plain error.  *E.g.*, *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012).  Under that standard, Moreno must show a forfeited plain error (clear or obvious error, rather than one subject to reasonable dispute) that affected his substantial rights.  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  If he makes that showing, we have the discretion to correct such reversible plain error, but generally should do so only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings".  *Id.*

Moreno essentially concedes this issue is foreclosed by the Supreme Court's contrary holding in *Mistretta v. United States*, 488 U.S. 361, 412 (1989),

No. 19-10401

and raises the issue to preserve it for possible further review.  In short, the requisite clear or obvious error is lacking.

B.

As stated, Moreno challenges the application of enhancements under three subsections of Guideline § 2D1.1:  (b)(1) (possession of dangerous weapon in connection with drug offense); (b)(5) (offense involved importation of methamphetamine); and (b)(12) (maintaining premises for purpose of manufacturing or distributing controlled substance).  He preserved each challenge in district court.

Although post-*Booker*, the Guidelines are advisory only, the district court must avoid significant procedural error, such as improperly calculating the Guidelines sentencing range.  *Gall v. United States*, 552 U.S. 38, 46, 51 (2007).  If no such procedural error exists, a properly preserved objection to an ultimate sentence is reviewed for substantive reasonableness under an abuse-of-discretion standard.  *Id.* at 51; *United States v. Delgado-Martinez*, 564 F.3d 750, 751–53 (5th Cir. 2009).  In that respect, for issues preserved in district court, its application of the Guidelines is reviewed *de novo*; its factual findings, only for clear error.  *E.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).  "A factual finding is not clearly erroneous if it is plausible in [the] light of the record read as a whole."  *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005) (citation omitted).

1.

In asserting Guideline § 2D1.1(b)(1) is unconstitutional as applied to him, Moreno contends the Guideline requires a weapon be possessed during a drug offense and requires a connection between the firearm and the offense.  In this instance, the connection was lacking, he contends, because:  "No one ever stated that they ever saw [him] with a firearm, nor are there any reports or allegations that he ever brandished a weapon, threatened to use a weapon

5

or was seen or reported to be carrying a weapon in connection with drug transactions".

The Commentary Application Note 11(A) to the Guideline provides "[t]he enhancement should be applied if [a] weapon was present, unless it is clearly improbable that the weapon was connected with the offense". U.S.S.G. § 2D1.1 cmt. n.11(A). Moreno contends that, because he had no felony convictions and was not a felon in possession of a firearm, his Second Amendment right to possess firearms could not "be taken away based on a sentencing guideline['s] rebuttable presumption" until he committed a "criminal misuse of a firearm".

a.

Regarding Moreno's challenge to the constitutionality of the court's applying § 2D1.1(b)(1) to him, a preserved constitutional challenge to a Guideline's application is reviewed *de novo*. *United States v. Preciado-Delacruz*, 801 F.3d 508, 511 (5th Cir. 2015) (citations omitted). "[W]hether the facts found are legally sufficient to support the enhancement" is also reviewed *de novo*. *United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010). To the extent his challenge is to the application of the Guideline more generally, however, "the decision to apply § 2D1.1(b)(1) is a factual one . . . review[ed] only for clear error". *United States v. Eastland*, 989 F.2d 760, 769 (5th Cir. 1993) (citation omitted).

Guideline § 2D1.1(b)(1) increases a base offense level by two levels "[i]f a dangerous weapon (including a firearm) was *possessed*" in the course of an offense involving drugs. U.S.S.G. § 2D1.1(b)(1) (emphasis added). To prove a dangerous weapon was possessed in the course of a drug-trafficking offense, the Government must demonstrate "by a preponderance of the evidence that a temporal and spatial relation existed [among] the weapon, the drug[-]trafficking activity, and the defendant". *United States v. Juluke*, 426 F.3d 323, 328 (5th Cir. 2005) (citation omitted). It may satisfy this burden by showing

"the weapon was found in the same location where the drugs or drug paraphernalia [were] stored". *Id.* (alteration in original) (citation omitted).

As discussed, the commentary provides that this enhancement "should be applied if the weapon was present, *unless it is clearly improbable* that the weapon was connected with the offense". U.S.S.G. § 2D1.1 cmt. n.11(A) (emphasis added). In that regard, the enhancement is appropriate, *inter alia*, where nothing "links [a weapon] to any particular conspirator" but where it is nonetheless "plausible to find that the only purpose of the weapon was to support the drug business". *United States v. Rodriguez-Guerrero*, 805 F.3d 192, 196 (5th Cir. 2015). This is so because "[t]he mere fact that a weapon cannot be attributed to any specific drug trafficker does not decrease the danger of violence". *Id.*

Our court applies a two-step framework to challenges to restrictions placed upon an individual's Second Amendment right. *NRA v. ATF*, 700 F.3d 185, 194 (5th Cir. 2012). "[T]he first inquiry is whether the conduct at issue falls within the scope of the Second Amendment right", which is determined by "look[ing] to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee". *Id.* (citations omitted). "If the challenged law burdens conduct . . . outside the Second Amendment's scope, then the law passes constitutional muster. . . . If the law burdens conduct that falls within [it], we . . . apply the appropriate level of means-ends scrutiny". *Id.* at 195 (citations omitted). The level of scrutiny applied depends upon the restriction's severity. *See id.* (citations omitted).

The Second Amendment protects the "personal right to keep and bear arms for lawful purposes". *McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010). It does not, however, guarantee that the right it protects "may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of

Americans generally to individually keep and bear their private arms as historically understood in this country". *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001). In that regard, our court has held "[p]rohibiting unlawful drug users from possessing firearms is not inconsistent with the right to bear arms guaranteed by the Second Amendment", in part because "unlawful users of controlled substances pose a risk to society if permitted to bear arms". *United States v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005).

It goes without saying that the historical traditions associated with the Second Amendment do not include ensuring admittedly-guilty-drug-offense conspirators' sentences are not enhanced when they have possessed firearms during activities related to their offense. Like the unlawful users of controlled substances at issue in *Patterson*, drug traffickers pose a risk to society that is enhanced by their possessing firearms. Because this enhancement harmonizes with historical traditions regarding the Second Amendment, is not inconsistent with the right of Americans generally to bear arms, and punishes bearing arms only for unlawful purposes, this enhancement is constitutional as applied to Moreno.

b.

To the extent Moreno's challenge hinges on the presumption supplied by Commentary Application Note 11(A), it is unavailing. The district court did not need to apply the presumption because Moreno admitted possession of the firearms, which were located in close proximity to drugs, including crystalized methamphetamine. This clearly establishes the requisite temporal and spatial relation among the weapons, drug-trafficking activity, and Moreno. *See Juluke*, 426 F.3d at 328 (citation omitted).

c.

Alternatively, Moreno asserts the court erred in applying Commentary Application Note 11(A) to Guideline § 2D1.1(b)(1) because the Note conflicts

No. 19-10401

with the Guideline and is, therefore, invalid. As stated, Guideline § 2D1.1(b)(1) applies where a dangerous weapon is "possessed" in connection with a drug-trafficking offense. U.S.S.G. § 2D1.1(b)(1). Again, Note 11(A) explains "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense". *Id.* § 2D1.1 cmt. n.11(A).

Our court reviews "interpretation of the Sentencing Guidelines *de novo*, . . . apply[ing] the ordinary rules of statutory construction". *United States v. Serfass*, 684 F.3d 548, 550–51 (5th Cir. 2012) (citations omitted). Along that line, "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline". *Stinson v. United States*, 508 U.S. 36, 38 (1993).

At sentencing, Moreno admitted his "weapons were possessed" for purposes of subsection (b)(1), meaning the court did not have to apply Note 11(A). Even assuming, *arguendo*, the court did rely on the presumption, Moreno's contention that a conflict between the Commentary Application Note and the Guideline renders the Note invalid is unavailing. Note 11(A)'s stating "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense", U.S.S.G. § 2D1.1 cmt. n.11(A), provides an explanation of "possession", which is not inconsistent with, or a plainly erroneous reading of, the Guideline, as evidenced by our court's reading possession and presence harmoniously for nearly 30 years. *See, e.g.*, *United States v. Hooten*, 942 F.2d 878, 881–82 (5th Cir. 1991).

2.

Moreno next challenges the two-offense-level enhancement provided by Guideline § 2D1.1(b)(5) because his offense involved importation of

No. 19-10401

methamphetamine. The determination this enhancement applies is reviewed for clear error. *Serfass*, 684 F.3d at 550 (citation omitted).

Moreno asserts he was not involved in importation-related activities and had no actual knowledge, or reason to know, of the methamphetamine's importation. As Moreno's brief concedes, however, our court has held that "distribution (or possession with intent to distribute) of imported methamphetamine, even without more, may subject a defendant to the § 2D1.1(b)(5) enhancement". *United States v. Foulks*, 747 F.3d 914, 915 (5th Cir. 2014) (citations omitted). Further, our court recently held "the enhancement applies even if the distributor doesn't know of the drugs' foreign origins". *United States v. Kearby*, 943 F.3d 969, 976 (5th Cir. 2019) (citations omitted), *cert. denied*, 2020 WL 1496732 (U.S. 30 March 2020).

To the extent Moreno challenges the sufficiency of the evidence showing the methamphetamine was imported, during his post-arrest interview, Moreno told officers he knew the methamphetamine with which he was involved came from Mexico. Moreno has, therefore, arguably waived this challenge. *See Soza*, 874 F.3d at 889 (alteration, internal quotation marks, and citations omitted); *cf. Kearby*, 943 F.3d at 977. In any event, it was not clear error to apply Guideline § 2D1.1(b)(5)'s enhancement.

3.

Moreno's final challenge is to the application of Guideline § 2D1.1(b)(12), applicable "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance". U.S.S.G. § 2D1.1(b)(12). Commentary Application Note 17 provides the enhancement "applies to a defendant who knowingly maintains a premises . . . for the purpose of manufacturing or distributing a controlled substance, *including storage of a controlled substance for the purpose of distribution*". *Id.* § 2D1.1(b)(12) cmt. n.17 (emphasis added). "Manufacturing or distributing

No. 19-10401

a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises"; "the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently . . . for lawful purposes". *Id.*

"A district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error", and will be affirmed, as noted *supra*, if "plausible in [the] light of the record read as a whole". *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017) (citations omitted).

a.

As discussed, after Moreno was read his *Miranda* rights and waived them, he advised he might have a "couple of ounces" at his residence; when asked of what, he responded "ice". As noted, officers found approximately 78 grams of "ice" in the residence. Moreno also stated he received "three to four kilograms" of methamphetamine each month, which would be gone within a few days. Further, Moreno stated he "busted down" these kilograms because most of his buyers "were ounce level customers".

Moreno's reply brief, curiously, asserts "[n]o methamphetamine was found in" his home. This contradicts both the PSR, which states approximately 78 grams of "ice" (crystalized methamphetamine) were found during the search of his residence, and Moreno's opening brief on appeal, which, citing the PSR, states "[o]nly 1,600 grams of methamphetamine [this presumably should have been 'mari[h]uana', as stated on the cited PSR page] and approximately 78 grams of 'ice' were actually seized in the search of Moreno's residence". As stated, "ice" is another term for crystalized methamphetamine; on the Guidelines' "Drug Quantity Table", 4.5 kilograms of "Ice" is equivalent to 45 kilograms of methamphetamine. U.S.S.G. § 2D1.1(c)(1).

11

No. 19-10401

At sentencing, the parties disagreed whether drug storage was a primary use of the residence; after hearing argument from them, the court overruled Moreno's objection and adopted the recommended factual findings in the PSR and the addendum.  The court did not explicitly address whether it considered the storage of controlled substances a primary use of the residence; but, based on Moreno's stating there may have been "ice" at his residence, the officers' discovering "ice" at the residence, and Moreno's stating he possessed drugs received from Ashmore for only a few days, during which he busted down the kilograms he received into ounce-level amounts, the court's determination that Moreno maintained a premises for the purpose of distributing methamphetamine was plausible in the light of the record as a whole and, therefore, was not clearly erroneous.  *See, e.g.*, *Guzman-Reyes*, 853 F.3d at 263–65.

b.

To the extent Moreno contends the commentary to Guideline § 2D1.1(b)(12) is invalid because its inclusion of "storage" "for the purpose of distribution" adds to the Guideline's referencing only "manufacturing or distributing a controlled substance", this issue is raised for the first time on appeal and is arguably waived.  *See Soza*, 874 F.3d at 889 (alteration, internal quotation marks, and citations omitted).  To the extent it is not waived, because it was not raised in district court, review is only for plain error.  *E.g.*, *Broussard*, 669 F.3d at 546.  Because Moreno cites no authority supporting his proposition that the commentary to subsection (b)(12) is invalid because "storage" is mentioned only in the Commentary Application Note and adds to the text of the Guideline, he has not demonstrated the requisite clear or obvious error.  *See Puckett*, 556 U.S. at 135.

III.

For the foregoing reasons, the judgment is AFFIRMED.