# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-10885
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JESSE CARRILLO, JR., also known as Baby 9,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CR-22-1

Before HIGGINBOTHAM, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Jesse Carrillo, Jr., pleaded guilty to conspiracy to possess with intent to distribute methamphetamine and was sentenced to 188 months of imprisonment and four years of supervised release. Carrillo challenges the district court's calculation of his sentence, arguing that the district court clearly erred by applying an enhancement pursuant to U.S.S.G § 2D1.1(b)(1), based on the finding that he possessed a dangerous weapon in connection with

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the offense, and an enhancement pursuant to U.S.S.G. § 2D1.1(b)(12), based on the finding that he maintained a premises for purposes of distributing a controlled substance.

Carrillo argues that the district court erred by applying the § 2D1.1(b)(1) enhancement because there is no evidence that he possessed a weapon while conducting any drug trafficking transactions or that any such transactions occurred at his residence. He also argues that the firearm was not in proximity to the drugs.

We find no clear error with the district court's application of the enhancement. The fact that some drug trafficking conduct occurred outside of Carrillo's residence is not fatal to the application of the § 2D1.1(b)(1) enhancement given that Carrillo's conduct—storing drugs and drug proceeds in his residence—is clearly associated with his distribution offense. *See United States v. Marquez*, 685 F.3d 501, 508 (5th Cir. 2012). Likewise, although the gun was found in a different location on the premises than the drugs, the district court could have drawn a reasonable inference from the unrebutted evidence in the presentence report that the weapon was accessible to Carrillo to protect the methamphetamine and drug proceeds stored in the garage. *See United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014); *see also United States v. Juluke*, 426 F.3d 323, 326, 328-29 (5th Cir. 2005).

Carrillo's challenge to the premises enhancement under § 2D1.1(b)(12) is likewise unavailing. He argues that that the storage of the drugs in his house was "incidental or collateral" to the primary purpose of the premises, which was to provide him and his family with a place to live. In support of his argument, Carrillo points primarily to the fact that he did not sell methamphetamine directly out of his home, but instead transported the drugs elsewhere for sale. Certainly, § 2D1.1(b)(12) requires that a defendant's

purpose of storing a controlled substance for distribution at a premises may not be merely "incidental or collateral," but that use "need not be the sole purpose for which the premises was maintained." § 2D1.1, cmt. n.17. Therefore, a defendant's additional use of a premises as a family home is not necessarily fatal to application of § 2D1.1(b)(12), so long as facts in the record support that storage of the controlled substance was "one of the defendant's primary or principal uses for the premises." *Id*; *accord United States v. Barragan-Malfabon*, 537 F. App'x 483, 484-85 (5th Cir. 2013) (unpublished).

Under clear error review, the district court's conclusion that § 2D1.1(b)(12) applies need only be "plausible in light of the record as a whole." *See United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005). Here, there are sufficient facts in the record, which taken together support the district court's finding that Carrillo's storage of the methamphetamine in his home for distribution was "one of [his] primary or principal uses for the premises" and was not merely an "incidental or collateral" use. § 2D1.1, cmt. n.17. For example, the district court was free to consider the unrebutted factual findings in the Pre-sentence Report illustrating the large quantity of methamphetamine stored in Carrillo's garage, as well as the over $12,000 in drug proceeds also stored there and various other containers with methamphetamine residue. The PSR further contained evidence suggesting that, in addition to the garage, Carrillo also used his former residence as a premises for drug distribution and likely for storage, and he conducted drug transactions in the parking lot of that residence on multiple occasions.

The judgment of the district court is AFFIRMED.