# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 28, 2020

Lyle W. Cayce
Clerk

No. 20-40200

United States of America,

*Plaintiff—Appellee*,

*versus*

Jose Luis Galicia,

*Defendant—Appellant*.

Appeal from the United States District Court
for Southern District of Texas
USDC No. 1:17-CR-589-1

Before Haynes, Higginson, and Oldham, *Circuit Judges*.
Haynes, *Circuit Judge*:

Jose Luis Galicia appeals his sentence. He argues that the district court erred in applying a sentencing enhancement under U.S. Sentencing Guidelines § 2D1.1(b)(12) for maintaining a premises to distribute drugs because he stored drugs in his garage on an infrequent basis and only for brief periods of time. Because we conclude that one of the primary uses for Galicia's premises was the distribution of drugs, we AFFIRM Galicia's sentence.

No. 20-40200

## I.     Background

Galicia's co-conspirator, Gerardo Jimenez, was stopped by the U.S. Border Patrol near the Rio Grande River.  After the Border Patrol discovered approximately 169 kilograms of marijuana in his vehicle, Jimenez was taken into custody.  Jimenez told agents that Galicia had agreed to pay him for transporting the confiscated marijuana.  He also admitted that he had transported marijuana to Galicia's residence on three other occasions, using the same vehicle and method of operation.

Shortly after this interview, agents contacted Galicia, who agreed to speak with them.  Galicia admitted that the confiscated marijuana was supposed to have been taken to his house, and that he had been working with Jimenez for two-and-a-half years to transport drugs.  Galicia described the logistics of the drug-transporting operation as follows:  Jimenez would reverse his work truck into Galicia's carport, two unidentified men would offload the drugs, Galicia would cover the drugs with a blanket, and then other unidentified individuals would call him to pick up the drugs. Over time, different people and vehicles would come by to make pickups.

Galicia was then arrested.  He consented to a search of his house.  A canine alerted the authorities to the positive odor of narcotics at two storage sheds located in the back of Galicia's residence.  Two scales were found inside the sheds.  Galicia subsequently pleaded guilty to knowingly and intentionally possessing with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2.

Galicia's Presentence Investigation Report ("PSR") recommended a sentencing enhancement under U.S. Sentencing Guidelines § 2D1.1(b)(12) for utilizing his residence to store illicit narcotics during his involvement in a criminal conspiracy. Galicia objected, arguing that the main lawful reason for

the maintenance of the premises was to reside in it and that storage of marijuana was simply a collateral use of the premises.

The district court disagreed with Galicia. The court expressly found that one of the primary purposes for Galicia's residence was criminal activity, even if it was not *the* primary purpose. Accordingly, the district court applied the sentencing enhancement and sentenced Galicia to imprisonment for forty-six months. Galicia timely appealed.

## II. Standard of Review

"A district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error." *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017) (quotation omitted). Clear error exists "if, on the entire evidence, we are left with a 'definite and firm conviction' that a mistake has been committed." *United States v. Marquez*, 685 F.3d 501, 508 (5th Cir. 2012) (quotation omitted). The burden rests on the government to demonstrate the facts necessary to support the enhancement by a preponderance of evidence. *United States v. Soza*, 874 F.3d 884, 889 (5th Cir. 2017).

## III. Discussion

On appeal, Galicia argues that the district court clearly erred in applying the § 2D1.1(b)(12) sentencing enhancement, given the infrequency and brevity of his residence's use for drug activities. Galicia maintains that he stored drugs in his garage on only three occasions over a two-and-a-half-year period, and he specifically highlights the fact that the drugs were only stored for a "couple of hours" until they were picked up. Consequently, Galicia concludes that the distribution of drugs was only an incidental or collateral use of his home, where he has lived for approximately thirty-five years. In reaching this conclusion, he largely discounts the two scales found

in his storage sheds, arguing that this evidence was not enough to support a finding that a primary or principal use of his home was for distributing drugs. We disagree with Galicia's analysis.

The issue in this case centers around the degree of "use" necessary to be considered a "primary" use. As we noted in *United States v. Lopez*, "[i]t is clear that there can be more than one primary use of a building for purposes of evaluating the enhancement." 750 F. App'x 349, 351 (5th Cir. 2018) (per curiam); *see also* U.S. SENT'G GUIDELINES MANUAL § 2D1.1 cmt. n.17 (U.S. SENT'G COMM'N 2018) (stating that "distributing a controlled substance *need not be the sole purpose* for which the premises was maintained," just "*one* of the defendant's primary or principal uses for the premises" (emphases added)). In determining what constitutes a primary use, the commentary to the Sentencing Guidelines directs courts to consider how frequently the premises was used by the defendant for (1) "manufacturing or distributing a controlled substance"; and (2) "for lawful purposes." U.S. SENT'G GUIDELINES MANUAL § 2D1.1 cmt. n.17 (U.S. SENT'G COMM'N 2018). As we have noted in other cases, the evidentiary bar for establishing a primary use "has not been set high." *United States v. Fonseca*, No. 19-20701, 2020 WL 6479180, at *3 (5th Cir. Nov. 3, 2020) (per curiam) (quotation omitted); *United States v. Rodriguez*, 707 F. App'x 224, 227 (5th Cir. 2017).

We conclude that Galicia's premises had at least two primary uses: (1) as his residence, and (2) as a storage site for drug distribution. These primary uses need not be equivalent. Galicia may have lived in the premises and raised his family there for thirty-five years, but we agree with the district court that the premises were eventually used on a continuing basis for the storage and distribution of drugs. Hence, the long-term, residential quality of the premises cannot shield Galicia from this enhancement—indeed, if that were the case, a drug dealer could effectively immunize his home, provided

he lived there long enough. *See United States v. Carrillo*, 689 F. App'x 334, 335 (5th Cir. 2017) (per curiam) (concluding "a defendant's additional use of a premises as a family home is not necessarily fatal to application of § 2D1.1(b)(12)").

We also note that Galicia admitted to storing drugs in his garage on at least three occasions,[1] not including Jimenez's aborted attempt to deliver drugs to Galicia's residence shortly before his arrest. Further, the discovery of two scales in Galicia's storage sheds, along with the positive detection of narcotics by an odor-sniffing canine, indicates that Galicia may not have strictly limited his drug storage activities to the garage, leaving open the possibility that his residence was used to store drugs on other occasions. Given the low bar for establishing a primary use for a premises, we AFFIRM the district court's sentence.

---

[1] Galicia's account of the drug operation suggests a repeated pattern of illegal drug storage. He admitted that he had been working with Jimenez to offload drugs and that, over time, different subjects and vehicles would come by to pick up the loads. This evidence does not suggest a handful of isolated incidents.