# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 9, 2021

Lyle W. Cayce
Clerk

No. 20-50008

United States of America,

*Plaintiff—Appellee*,

*versus*

Keith Nunley,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1: 18-CR-399-1

Before Higginbotham, Southwick, and Engelhardt, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:*

Defendant pled guilty to one count of conspiracy to distribute synthetic cannabinoids and one count of possession with the intent to distribute synthetic cannabinoids in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1). The district court sentenced him to 2 concurrent terms

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

of 188 months of imprisonment followed by a 3-year term of supervised release. He appealed, arguing that the district court procedurally erred in imposing the sentence. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2018, police in Austin, Texas, were notified by agents of the Drug Enforcement Administration that a package containing synthetic cannabinoid powder had been mailed from China to a post office box in Austin and had been intercepted. A few days later, a second, similar package was intercepted. Keith Nunley rented the post office box. When Nunley arrived at the post office to pick up the two packages, he was arrested. Five additional packages of powder connected to Nunley were intercepted. Austin police detectives searched Nunley's residence and discovered more powder. In total, Nunley was connected to about 27 kilograms of synthetic cannabinoid powder.

Synthetic cannabinoid powder is used to make synthetic marijuana, which is sold as a mixture. To make the mixture, manufacturers typically combine synthetic cannabinoid powder with acetone and then spray that liquid on plant matter, such as Damiana leaf. In Nunley's residence, detectives discovered 82.9 kilograms of Damiana leaves, containers of acetone, a substance used for flavoring synthetic marijuana, and a hazmat suit. They also discovered a "double-bagged trash bag" that "reeked of acetone" and contained Damiana leaf, indicating a synthetic marijuana product that was "freshly mixed" but unfinished.

Nunley pled guilty to one count of conspiracy to distribute synthetic cannabinoids and one count of possession with the intent to distribute synthetic cannabinoids. The presentence report ("PSR") assessed a total

No. 20-50008

offense level of 35 and a criminal history category of II, which resulted in a Guidelines range of 188 to 235 months of imprisonment.

To determine the quantity of drugs involved in Nunley's offense, the PSR converted the seized synthetic cannabinoid powder to finished synthetic marijuana using a 1:15 ratio. That conversion was based on an estimate by the case agent assigned to Nunley's case that the processing of 1 kilogram of powder "results in a total of 15 kilograms of finished synthetic marijuana." Nunley's total offense level also included a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance.

At sentencing, Nunley objected to the conversion of synthetic cannabinoid powder to finished synthetic marijuana using the 1:15 ratio. He also objected to the enhancement for maintaining a drug premises. The district court overruled Nunley's objections and imposed a sentence of 188 months. Nunley appealed.

During the pendency of the appeal, the Government filed a motion for limited remand so that the district court could "clarify its drug quantity finding." On limited remand, the district court explained how it calculated the quantity of drugs involved in Nunley's offense. The court also explained that it "analyze[d] the Section 3553 factors and found independently that a sentence of 188 months was a reasonable sentence that was sufficient but not greater than necessary to punish Nunley for the crimes for which he had been convicted." In sum, the court explained that it "would have imposed that sentence regardless of the Guidelines."

## DISCUSSION

Nunley alleges that the district court committed procedural error in determining his sentence. For such errors, we review the district court's interpretation or application of the Guidelines *de novo* and its factual findings

3

for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Even if we find procedural error, we may still affirm if the error is "harmless — that is, if 'the error did not affect the district court's selection of the sentence imposed.'" *United States v. Robinson*, 741 F.3d 588, 601 (5th Cir. 2014) (quoting *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009)).

We divide our analysis into two separate issues: (I) the validity of the enhancement for maintaining a drug premises and (II) the conversion of synthetic cannabinoid powder to finished synthetic marijuana. As a preview, we will resolve the second issue on the basis of harmlessness. Harmlessness also applies to the drug-premises issue, but we analyze that issue simply to demonstrate there was no error at all there.

## I.     *Maintaining a drug premises*

The Sentencing Guidelines provide for a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). We have held that "[a] district court's application of § 2D1.1(b)(12) is a factual finding" that we review for clear error. *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017) (quoting *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015)).

Nunley argues that the district court erred by applying the drug-premises enhancement because it failed to consider that he used his apartment as a residence. We recently clarified that the use of a premises as a residence does not preclude application of the drug-premises enhancement. *United States v. Galicia*, 983 F.3d 842, 844 (5th Cir. 2020). In that case, the defendant challenged the district court's application of a drug-premises enhancement on the ground that "the distribution of drugs was only an incidental or collateral use of his home, where he [had] lived for

approximately [35] years." *Id.* Specifically, he maintained that he had "stored drugs in his garage on only three occasions over a two-and-a-half-year period, and . . . the drugs were only stored for a 'couple of hours' until they were picked up." *Id.*

We affirmed the district court's application of the sentencing enhancement. *Id.* at 845. We explained that, to qualify for an enhancement under Section 2D1.1(b)(12), the Government need establish only that drug manufacturing or distributing was a primary use of the premises not the foremost primary use. *See id.* at 844. We described that evidentiary burden as a "low bar" and concluded that the Government satisfied that bar by establishing that the defendant used his home to store drugs for distribution. *Id.* at 844–45.

The record supports the district court's finding that manufacturing synthetic cannabinoids was a primary, as opposed to incidental, use of Nunley's apartment. Nunley's apartment contained a substantial amount of synthetic cannabinoid powder, along with "everything . . . that he needed to manufacture a finished, usable synthetic marijuana." Officers also found evidence that Nunley was in fact using his apartment to manufacture synthetic marijuana. We find no clear error in the district court's application of the drug-premises enhancement.

## II.    *Conversion of powder to finished synthetic marijuana*

Nunley argues that the conversion of synthetic cannabinoid powder to finished synthetic marijuana was legal error because the Guidelines do not authorize it, and it was factual error because the conversion ratio was not supported by the record. We need not reach the merits of this issue, though, because we hold that the district court's error, if any, was harmless.

Where a defendant alleges that the district court incorrectly calculated the Guidelines range, the Government shows harmless error by

demonstrating (i) "that the district court would have imposed a sentence outside the properly calculated sentencing range for the same reasons it provided at the sentencing hearing"; and (ii) "that the 'sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation.'" *United States v. Martinez-Romero*, 817 F.3d 917, 924 (5th Cir. 2016) (quoting *United States v. Ibarra-Luna*, 628 F.3d 712, 719 (5th Cir. 2010)).

The Government as proponent of the sentence satisfies the first step. In explaining its reasons for the 188-month sentence, the district court noted that Nunley had "been involved in" synthetic cannabinoids "for some time," and it appeared that trafficking the drug "was going to be his livelihood for the foreseeable future." Based on that, the court found his criminal history to be "probably understated." The court then declined to adopt Nunley's requested Guidelines range of 97 to 121 months and noted that he was potentially subject to a maximum of two 240-month sentences. The court found that a sentence of 188 months was "appropriate" and "reasonable" and that it adequately accounted for the Section 3553 factors. The court concluded that "the [G]uidelines got it right and that [it] would in fact have sentenced [Nunley] to 188 months . . . on each count to run concurrently, because that is the appropriate and reasonable sentence to impose in this case."

The Government also demonstrated that Nunley's sentence was not improperly influenced by the Guidelines calculation. In the district court's written clarification in response to our limited remand, the court explained that after considering the Section 3553 factors, it "determined that a 188-month sentence was the appropriate sentence to impose and the sentence that the court would have imposed in any event." The court reiterated this point, stating that it "analyze[d] the Section 3553 factors and found independently" that the sentence was appropriate. The court concluded its

discussion by emphasizing that it "would have imposed that sentence regardless of the Guidelines."

We conclude that "the district judge was firm, plain, and clear in expressing the court's reasoning, and we take him at his word." *See United States v. Castro-Alfonso*, 841 F.3d 292, 298–99 (5th Cir. 2016). Even if the district court procedurally erred, that error was harmless.

AFFIRMED.