# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 21, 2023

Lyle W. Cayce
Clerk

No. 21-10728

United States of America,

*Plaintiff—Appellee*,

*versus*

Christopher Kalejaiye Ajayi,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CR-290-6

Before Richman, *Chief Judge*, and Elrod and Oldham, *Circuit Judges*.
Per Curiam:[*]

Christopher Ajayi appeals his conviction and 151-month sentence for his involvement in a pill mill. We affirm.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10728

## I.

Ajayi was a pharmacist in a "pill mill" drug distribution operation. Abbreviating, the crime worked like this: corrupt doctors wrote fake prescriptions, Ajayi filled those prescriptions, and the "patients" (or their handlers) took the prescribed drugs and sold them on the street. Ajayi's operation involved three drugs: hydrocodone, a "semisynthetic opioid"; carisoprodol, a muscle relaxant; and promethazine with codeine, a high-strength cough syrup.

The jury convicted Ajayi of one drug conspiracy count for each predicate drug, in violation of 21 U.S.C. § 846. It also convicted Ajayi of two additional counts for possession with intent to distribute hydrocodone and carisoprodol, in violation of 21 U.S.C. § 841(a). The district court sentenced him to 151 months' imprisonment, the low end of the applicable Guidelines range.

On direct appeal, Ajayi argues that errors in the district court's jury instructions require his retrial. In the alternative, Ajayi argues that the district court miscalculated his Sentencing Guidelines offense level. We (II) review Ajayi's jury-charge contentions, then we (III) review his sentence.

## II.

Ajayi's points of error connected to his jury instructions can be consolidated into two items: whether the jury instructions (A) adequately conveyed the *mens rea* requirements for Ajayi's offenses or (B) improperly characterized the weight of the evidence.

## A.

Ajayi argues that the district court failed to precisely articulate the *mens rea* element applicable to 21 U.S.C. §§ 841(a) and 846 offenses, in the context of a pharmacist ordinarily authorized to distribute drugs. So, to

evaluate Ajayi's conviction, we must first define the *mens rea* requirements of both 21 U.S.C. §§ 841(a) and 846. Because that involves statutory construction, our review is *de novo. See United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013).

Start with § 846, which imposes liability on anyone who "attempts or conspires" to commit certain drug offenses. *See* 21 U.S.C. § 846.  The Supreme Court has held that "conspiracy" in the § 846 context takes the term's common-law definition. *United States v. Shabani*, 513 U.S. 10, 13–14 (1994). The *mens rea* for common-law conspiracy is specific intent; the defendant must intend to agree and must intend that a substantive offense be committed by some member of the conspiracy. *Ocasio v. United States*, 578 U.S. 282, 288 (2016).

Next consider 21 U.S.C. § 841(a). Section 841(a) is the substantive drug distribution statute. It requires that a defendant, without legal authorization, "knowingly or intentionally" possess with intent to distribute or actually distribute drugs. *Id.*

Ajayi's arguments focus on the district court's § 841(a) instructions. The district court's jury charge said that in the context of a pharmacist, "possess with intent to distribute" means "to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction, and outside the scope of professional practice or not for a legitimate medical purpose."

Ajayi argues the above instruction, and others related to it, failed to capture the *mens rea* required by § 841(a). Ajayi obviously possessed and intended to transfer possession of controlled substances every time he filled a prescription. The crux of the matter is not just whether Ajayi knew that he was filling prescriptions, but also whether he had *subjective awareness* of the illegitimate nature of those scripts when he filled them. Ajayi argues that the

No. 21-10728

district court's instructions left open the possibility of conviction based solely on the *objectively* illegitimate nature of the prescriptions, because the district court did not make clear whether "intent" modifies only "deliver or transfer" or continues to modify through "not for a legitimate medical purpose."

After Ajayi was convicted but before argument was heard in this case, the Supreme Court decided *Ruan v. United States*, 142 S. Ct. 2370 (2022). There, the Court held that when a healthcare professional authorized to dispense controlled substances is charged with violating § 841(a), the Government must "prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner." *Id.* at 2375. In other words, the defendant must *subjectively* understand the illegitimate nature of the distribution they facilitate to commit an offense under § 841(a). *Id.* at 2381. Filling an objectively illegitimate prescription is not a sufficient condition to convict. *Id.*

In this case, the district court drafted Ajayi's jury charge before it could benefit from *Ruan*'s guidance. The district court did make clear, however, that conviction for a § 846 conspiracy offense requires that a defendant know "the unlawful purpose of the agreement" and join "in the agreement willfully, that is, with the intent to further its unlawful purpose." Significantly, Ajayi's reply brief appears to concede that this conspiracy instruction was adequate. At oral argument, Ajayi's counsel acknowledged that the individual conspiracy instruction was appropriate, but disputed the holistic sufficiency of the instructions.

It is true that we evaluate jury instructions as a whole, in the context of the trial record. *See United States v. Phea*, 755 F.3d 255, 266 (5th Cir. 2014); *United States v. Guidry*, 406 F.3d 314, 321 (5th Cir. 2005). On the specific facts of this case, we find that even if idiosyncratic portions of the jury charge

lacked clarity on § 841(a)'s *mens rea* requirement, the adequate § 846 *mens rea* instruction filled any gap by clearly requiring that the jury find that Ajayi have understood the illegitimate nature of his conduct.

Further, any error in the § 841(a) instruction was harmless. *See United States v. Gas Pipe, Inc.*, 997 F.3d 231 (5th Cir. 2021) (indicating that claims of jury instruction error are subject to harmless error review). The district court not only provided a concededly adequate conspiracy instruction but also paired it with an instruction consistent with *Pinkerton v. United States*, 328 U.S. 640 (1946). Ajayi does not dispute that predicate § 841(a) offenses occurred in furtherance of the alleged § 846 conspiracy for which he was convicted. That is enough to sustain a conviction for those predicate § 841(a) offenses. *See Pinkerton*, 328 U.S. at 646–47.

B.

Ajayi next argues that the district court's jury charge improperly commented on the weight of the evidence. Ajayi's argument ties to a single page of the district court's twenty-two page charge, on which the trial court explained circumstances that might support a jury's inference that scripts filled by Ajayi were illegitimate.

Ajayi objected to the relevant portion of the jury instructions at trial, but he did not state the grounds for his objection. We require that a party attempting to preserve jury instruction error not only object but also assert specific grounds for that objection at trial and then argue consistently with those grounds on appeal. *See United States v. Arnold*, 416 F.3d 349, 355 (5th Cir. 2019) (finding plain error review applicable where defendant made an unspecific objection); *United States v. Heath*, 970 F.2d 1397, 1402 (5th Cir. 1992) ("A party may not state one ground when objecting to an instruction and attempt to rely on a different ground for the objection on appeal."). Accordingly, we review this argument for plain error only.

We have previously held that trial court judges may not "usurp[] the province of the jury" by applying the law to the facts in the jury's stead. *United States v. Johnson*, 718 F.2d 1317, 1318, 1325 (1983). That said, trial judges do retain a "common-law power to comment on the evidence," provided they do so without "calling the turn" (deciding the outcome). *Id.* at 1324–25 (quotation omitted). This power includes "wide latitude in commenting on the evidence during [a trial court's] instructions to the jury." *United States v. Jara-Favela*, 686 F.3d 289, 297–98 (5th Cir. 2012). In *Jara-Favela*, the trial court's "possibly confusing" oral instructions arguably suggested that the defendant had lied. *Id.* at 298. On review, we found that "the record as a whole" revealed no "serious[] prejudice" and that the remarks in context did not appear to demand the jury reach a specific conclusion. *Id.* at 298–99.

Here, the trial court's remarks explained relevant, available inferences in conditional language, but did not dictate that the jury reach any specific outcome. The trial court also emphasized to the jury that they should "not assume from anything I may have done or said during the trial that I have any opinion" concerning the case, and that the jury must "arrive at your own verdict." Our review of the remainder of the trial record reveals no evidence of bias on the part of the trial judge.

Ajayi does not come close to showing plain error.

III.

Ajayi also argues that the district court miscalculated his offense level and Guidelines sentencing range. More precisely, Ajayi challenges (A) the drug weight for which he was held liable, (B) a premises enhancement, and (C) an obstruction enhancement. We consider each item in turn and find no reversible error.

No. 21-10728

A.

Ajayi's Pre-Sentence Report ("PSR") recommended holding Ajayi responsible for 947 kilograms of converted drug weight. Under the Sentencing Guidelines, that converted drug weight yields a base offense level of 28. *See* U.S.S.G. §2D1.1(c). The district court adopted the PSR's findings and its recommended base offense level.

The PSR's converted drug weight calculation includes every promethazine and carisoprodol prescription that Ajayi filled for the doctor at the heart of the alleged pill mill conspiracy. Ajayi argues that is unfair, because even if he came to know the scripts were illegitimate, the Government has not shown that he knew of the illicit purpose of the very first promethazine and carisoprodol prescriptions he filled for the offending doctor. Some allowance, Ajayi contends, must be made for that.

Even if Ajayi is correct, however, any error connected to carisoprodol or promethazine was harmless. That is because 99.9% of the converted drug weight attributed to Ajayi stems from hydrocodone. Everything else was a drop in the bucket that could not plausibly impact Ajayi's offense level or Guidelines range.

Ajayi also disputes the PSR's measurement of this hydrocodone liability. The PSR held Ajayi liable for ~14,000 hydrocodone pills filled in response to prescriptions issued by the offending doctor, from December 2014 onward. But the PSR did not impose liability for around 5,000 hydrocodone pills filled for the relevant doctor prior to December 2014, around the time when hydrocodone was reclassified as a Schedule II drug (an increase in seriousness from its prior classification) and around when pharmacists obtained certain tools to help catch illegitimate prescriptions. Other than a suggestion that his liability be cut by a further third (conveniently, just enough to secure a lower Guidelines calculation), Ajayi

does not argue with specificity why a different hydrocodone converted weight ought be preferred to the one the PSR derived. We are deferential to a PSR's drug weight calculation in the absence of rebuttal evidence from the defendant.[1] *United States v. Kearby,* 943 F.3d 969, 974 (5th Cir. 2019). Such deference is warranted here.

### B.

Over Ajayi's objection, the district court imposed a two-level enhancement for maintaining a drug premises. Section 2D1.1(b)(12) of the Sentencing Guidelines provides for this enhancement when a defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." The premises enhancement applies where illicit distribution was "*one* of the defendant's primary or principal uses for the premises." *United States v. Galicia*, 983 F.3d 842, 844 (5th Cir. 2020) (quotation omitted). The application of § 2D1.1(b)(12) is a factual question that we review for clear error. *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017).

In this case, the district court based the enhancement on Ajayi's pharmacy. Ajayi argues that the Government hasn't established that illegal drug transmission was a "primary or principal" use of his pharmacy. But the

---

[1] The best evidence Ajayi offers in support of some unspecified, lower hydrocodone converted drug weight calculation is the fact that he was shot in 2016 and had to recuperate afterward. Ajayi contends that unspecified others ran his pharmacy for several months after this unfortunate event and that he cannot be held liable for prescriptions they dispensed. But no medical records substantiate Ajayi's contention that he was incapacitated for more than a short period. The PSR and the district court found that Ajayi's attribution to others lacked credibility. We will not disturb that conclusion. And even if the calculation was off, any error was harmless. Ajayi would need to reduce his hydrocodone liability at least 26% to secure a lower Guidelines offense level and sentencing range; the chance of doing so by evading liability for a few months of 2016 is next to nonexistent when over 70% of his hydrocodone liability arose in and after 2019.

record indicates that at relevant times, 80% or more of the pharmacy's controlled substances distribution was for prescriptions issued by the doctor involved in the alleged drug conspiracy. While the pharmacy itself might have had other uses besides illegally distributing controlled substances, the evidentiary bar for a premises enhancement is not high. *See Galicia*, 983 F.3d at 844; *see also United States v. Loston,* No. 21-30772, 2022 WL 17352572 (5th Cir. Dec. 1, 2022) (per curiam) (reviewing our § 2D1.1(b)(12) precedent). Under these circumstances, we lack a "definite and firm conviction that a mistake has been committed" and hence cannot find clear error. *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (defining clear error).

## C.

Finally, Ajayi objects to the district court's imposition of a two-level enhancement for obstruction of justice. Section 3C1.1 of the Sentencing Guidelines provides a two-level enhancement where the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." The Comments make clear that perjury during a defendant's trial testimony may constitute obstruction. *See* U.S.S.G. § 3C1.1, cmt. n.4.

A district court's factual findings concerning § 3C1.1 are reviewed for clear error. *United States v. Rickett*, 89 F.3d 224, 226 (5th Cir. 1996). We review any legal questions *de novo. See United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010).

Relying on Ajayi's conviction, the PSR concluded that Ajayi perjured himself on the stand when Ajayi testified that he was unaware of the alleged drug conspiracy connected to his pharmacy. The PSR, relying on phone intercepts and information from Ajayi's coconspirators, also concluded that Ajayi testified untruthfully about his relationships with other participants in

the pill-mill distribution scheme. The district court adopted the PSR's conclusions.

Ajayi argues that the district court failed to comply with the Supreme Court's instruction in *United States v. Dunnigan*, 507 U.S. 87 (1993), that trial courts applying § 3C1.1 enhancements make clear findings of perjury. *Id.* at 95. There, the Supreme Court indicated that "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Ibid*. But a § 3C1.1 enhancement survives review when a trial court makes a single finding that "encompasses all of the factual predicates for a finding of perjury." *Ibid*. The trial court may make such a finding by adopting a PSR that contains adequate findings. *See United States v. Perez-Solis*, 709 F.3d 453, 470 (5th Cir. 2013).

In Ajayi's case, the district court adopted the PSR, which adequately described Ajayi's perjury. Nothing more was required. *See ibid*. Still, the district court gave further consideration to Ajayi's objections before deciding at the sentencing hearing that the district court "agree[d] with the government as to his testimony that it meets the obstruction enhancement."

After carefully reviewing the record, we hold that the district court's findings "encompasse[d] all of the factual predicates for a finding of perjury" and were legally adequate. *See Dunnigan*, 507 U.S. at 95. And, since the district court's factual findings were "plausible in light of the record as a whole," those factual findings were not clearly erroneous. *See United States v. Lucio*, 985 F.3d 482, 485 (5th Cir. 2021) (quotation omitted).

AFFIRMED.