# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 6, 2024

Lyle W. Cayce
Clerk

No. 24-50090
Summary Calendar

Unitɛd Statɛs of America,

*Plaintiff—Appellee*,

*versus*

Daniel Ochoa Meza,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CR-734-3

Before Davis, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:*

Daniel Ochoa Meza was convicted of conspiracy to possess with intent to distribute cocaine. On appeal, he challenges the application of a two-level enhancement under U.S.S.G. § 3B1.1(c) for acting as an organizer, leader, manager or supervisor in the conspiracy; the application of a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for

_____

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

the purpose of manufacturing or distributing a controlled substance; and the determination that his residence was subject to criminal forfeiture pursuant to 21 U.S.C. § 853(a)(2).

The application of a two-level enhancement under both § 3B1.1(c) and § 2D1.1(b)(12) are factual findings reviewed for clear error. *See United States v. Guzman-Reyes*, 853 F.3d 260, 263, 265 (5th Cir. 2017); *United States v, Galicia*, 983 F.3d 842, 843 (5th Cir. 2020). The application of an enhancement under the Guidelines is not clearly erroneous if it is "plausible based on the record as a whole[,]" *United States v. Ochoa-Gomez*, 777 F.3d 278, 282 (5th Cir. 2015), and the district court may draw reasonable inferences from the facts in determining whether the enhancement applies, *Guzman-Reyes*, 853 F.3d at 265. We review factual findings related to an order of forfeiture for clear error and the ultimate determination that forfeiture was warranted de novo. *United States v. Juluke*, 426 F.3d 323, 326 (5th Cir. 2005).

As to Meza's first argument, the record as a whole supports the finding that he played an aggravating role in the conspiracy. *See* § 3B1.1(c); *Ochoa-Gomez*, 777 F.3d at 282. Meza received cocaine from the leader of the drug trafficking organization (DTO) on a regular basis; cut cocaine before selling it; redistributed or sold the cocaine; returned drug proceeds to the leader of the DTO; had his "own people" who sold cocaine for him, over five of whom were observed meeting with Meza at his residence; and utilized his personal business in an attempt to conceal illegal drug proceeds. Given that, application of the enhancement was not error. *See, e.g.*, *Guzman-Reyes*, 853 F.3d at 265-66; *United States v. Nava*, 624 F.3d 226, 233 (5th Cir. 2010).

As to Meza's second argument, the record also sufficiently establishes that he maintained a premises for distributing a controlled substance because at least one of the primary or principal uses of the residence was the storage

and distribution of cocaine. *See* § 2D1.1(b)(12) & comment. (n.17); *Galicia*, 983 F.3d at 843-44. While no drugs were found in the house, Meza conceded that he sold cocaine, that drugs were delivered to his residence, and that at times there were narcotics in his residence. Meza met with the leader of the DTO at Meza's residence multiple times during the investigation to exchange money and cocaine and used his residence to meet with individuals who sold cocaine for him. Law enforcement discovered holes in the ground where they believed drugs were stored and a stolen firearm. Despite Meza's assertion that the primary purpose of the residence was to serve as a family home, the "long-term, residential quality of the premises" does not shield a defendant from the application of an enhancement under § 2D1.1(b)(12) when the evidence otherwise supports its application. *See Galicia*, 983 F.3d at 844. The evidence in the record and Meza's own admissions are adequate to do so. *See, e.g.*, *id*. at 843-45.

Finally, as to Meza's argument that the district court erred in determining that his residence was subject to criminal forfeiture because it was used to facilitate drug activity, his own admissions establish that drugs were delivered to and stored in the home, and the record demonstrates that Meza met with the leader and other participants of the DTO at his residence to conduct drug trafficking activity on multiple occasions. Accordingly, the district court properly concluded that there was a sufficient nexus between the property and the offense such that the property was subject to criminal forfeiture. *See Juluke*, 426 F.3d at 326.

AFFIRMED.