# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 25, 2025

Lyle W. Cayce
Clerk

No. 24-40621

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

*versus*

RODNEY IGNACIO CASTRO,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:22-CR-115-5

Before SMITH, DENNIS, and RICHMAN, *Circuit Judges*.

PRISCILLA RICHMAN, *Circuit Judge*:

Rodney Ignacio Castro pleaded guilty to conspiracy to possess with intent to distribute and distribution of a controlled substance in violation of 21 U.S.C. §§ 846 and 841(a)(1). Castro admitted that he used an apartment in downtown Houston "in furtherance of his drug trafficking activities." A closet inside the apartment contained a handgun along with $1,050,086 in United States currency and jewelry worth approximately $1.25 million that "were the proceeds" of Castro's drug trafficking. The district court applied two sentencing enhancements, increasing Castro's offense level by two levels under U.S.S.G. § 2D1.1(b)(1) because "a dangerous weapon (including a

firearm) was possessed"[1] and two levels under § 2D1.1(b)(12) because Castro "maintained a premises for the purpose of manufacturing or distributing a controlled substance."[2]  Castro appealed, arguing neither enhancement applies because no evidence indicated drugs or drug paraphernalia were ever in the apartment.  We affirm.

## I

This case arises out of an investigation of a drug trafficking organization operating in several cities in eastern Texas.  Through the investigation, agents identified multiple individuals involved in the trafficking conspiracy, including Castro.  Cargo was the supplier of cocaine to the conspiracy.  The investigation linked Castro to an apartment in downtown Houston.

Officers executed a search warrant at the apartment.  During the search, they located a suitcase in the closet containing valuables, namely $1,050,860 in United States currency and assorted jewelry worth roughly $250,000. Officers also located a gold-plated handgun that was unloaded and inside a gun case on the top shelf of the closet.

A grand jury indicted Castro for "[c]onspiracy to [p]ossess with the intent to distribute, and distribution of a Controlled Substance" in violation of 21 U.S.C. §§ 846 and 841(a)(1). Castro pleaded guilty.  In the factual basis for his plea, Castro admitted the valuables "were the proceeds of [his] cocaine trafficking enterprise."  Castro further admitted that he possessed the handgun and that he used the apartment "in furtherance of his drug trafficking activities."

---

[1] U.S.S.G. § 2D1.1(b)(1).

[2] U.S.S.G. § 2D1.1(b)(12).

No. 24-40621

The presentence report (PSR) found Castro was responsible for 39.05 kilograms of cocaine and calculated a base offense level of 32. The PSR then applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) because "a dangerous weapon (including a firearm) was possessed,"[3] and another two-level enhancement under § 2D1.1(b)(12) because Castro "maintained a premises for the purpose of manufacturing or distributing a controlled substance."[4] Both enhancements were based on the apartment where officers found the handgun and valuables. After a three-level decrease for acceptance of responsibility, Castro's total offense level was 33. With a criminal history category of III, his advisory sentencing range was 168-210 months according to the PSR.

Castro objected to both enhancements, arguing the firearm enhancement should not apply because the handgun "was not located where drugs or drug paraphernalia were stored." He also asserted that the premises enhancement should not apply because "no manufacturing, drugs or drug trafficking materials were located there when the property was searched." The district court overruled both objections. With respect to the firearm enhancement, the court reasoned that the handgun was "next to the proceeds." In applying the premises enhancement, the court relied on Castro's admission that he used the apartment "in furtherance of his drug trafficking activities."

The district court imposed a sentence of 210 months of imprisonment. The court stated that to the extent the advisory range was "incorrectly calculated, the Court would have imposed the same sentence without regard

_____

[3] *Id.* § 2D1.1(b)(1).

[4] *Id.* § 2D1.1(b)(12).

to the applicable guideline range in light of the factors set forth in 18 U.S.C. § 3553(a)." Castro appealed.

## II

We "review[] the district court's 'interpretation or application of the Sentencing Guidelines de novo and its factual findings for clear error.'"[5] The district court's application of §§ 2D1.1(b)(1) and (b)(12) are "factual finding[s] reviewed for clear error."[6] "Clear error exists 'if, on the entire evidence, we are left with a "definite and firm conviction" that a mistake has been committed.'"[7] However, we must affirm if the sentencing "objection raises no more than harmless error."[8]

Castro argues our review must be de novo because "[t]he facts used to support both enhancements remain undisputed." Castro relies on *United States v. Zapata-Lara*.[9] There, we concluded that the defendant's argument did "not concern the specifics of the factfinding, but, rather, whether the facts found are legally sufficient to support the enhancement," making "[o]ur review . . . *de novo*."[10] But *Zapata-Lara* "involved a peculiar situation

---

[5] *United States v. Sincleair*, 16 F.4th 471, 474 (5th Cir. 2021) (quoting *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007)).

[6] *United States v. Le*, 126 F.4th 373, 378 (5th Cir. 2025) ("A district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error." (quoting *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017))); *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014) ("The district court's determination that § 2D1.1(b)(1) applies is a factual finding reviewed for clear error." (quoting *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010))).

[7] *United States v. Galicia*, 983 F.3d 842, 843-44 (5th Cir. 2020) (quoting *United States v. Marquez*, 685 F.3d 501, 508 (5th Cir. 2012)).

[8] *United States v. Giglio*, 126 F.4th 1039, 1047 (5th Cir. 2025).

[9] 615 F.3d 388 (5th Cir. 2010).

[10] *Id.* at 390.

where the district court did not make any finding at all about whether the defendant personally possessed the firearm or a coconspirator foreseeably possessed it."[11] "In contrast, here, it is completely clear that the district court applied the enhancement based on [Castro's] personal possession of the firearm."[12] We therefore conclude *Zapata-Lara* is distinguishable and review for clear error.

## A

We begin with the firearm enhancement. Under U.S.S.G. § 2D1.1(b)(1), "a two-offense-level enhancement should be applied to a defendant convicted of conspiracy to possess with intent to distribute a controlled substance '[i]f a dangerous weapon (including a firearm) was possessed.'"[13] "For the enhancement to apply, the Government must first prove by a preponderance of the evidence that the defendant possessed the firearm."[14] "The Government can prove possession"[15] of the firearm "by showing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant."[16] "Under this standard, the Government must show that 'the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction

---

[11] *King*, 773 F.3d at 52; *see also United States v. Sincleair*, 16 F.4th 471, 475 (5th Cir. 2021) (applying de novo review because "like *Zapata-Lara*, 'we cannot be sure what rationale the court had in mind to support the [§ 2D1.1(b)(1)] enhancement'" (alteration in original) (quoting *Zapata-Lara*, 615 F.3d at 391)).

[12] *King*, 773 F.3d at 52.

[13] *Id.* at 53 (alteration in original) (quoting U.S.S.G. § 2D1.1(b)(1)).

[14] *Id.*

[15] *Sincleair*, 16 F.4th at 475.

[16] *Id.* (quoting *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764-65 (5th Cir. 2008)).

occurred.'"[17]  "If the Government meets that burden, the burden shifts to the defendant to show that it was clearly improbable that the weapon was connected with the offense."[18]

The handgun "was possessed by" Castro, and it was found in the closet of an apartment used "in furtherance of [Castro's] drug trafficking activities" next to money and jewelry that "were the proceeds of [Castro's] cocaine trafficking enterprise."   Given these facts, the Government established a "temporal and spatial relation . . . between the weapon, the drug trafficking activity, and the defendant," and it is not "clearly improbable that the weapon was connected with the offense."[19]

Castro argues "for the firearm enhancement to apply, the firearm must have been found in the same location where drugs or drug paraphernalia were stored, or where drug transactions occurred."  He contends this means the enhancement is inapplicable here because "[n]o drugs were found in the apartment[, n]o drug paraphernalia was recovered in the apartment[, and n]o drug buys or transactions were ever observed . . . at the apartment."  Castro's argument is unpersuasive.  "The proximity of a weapon to drug proceeds provides a sufficient nexus to conclude 'that it was not clearly improbable that the gun was connected with the offense.'"[20]  "Given that the gun and the drug proceeds were located in the same [closet], the district

---

[17] *United States v. Cooper*, 274 F.3d 230, 245 (5th Cir. 2001) (quoting *United States v. Eastland*, 989 F.2d 760, 770 (5th Cir. 1993)).

[18] *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010) (citing *Cooper*, 274 F.3d at 246 n.8).

[19] *Id.* (quoting *Cisneros-Gutierrez*, 517 F.3d at 764-65).

[20] *United States v. Noble*, 246 F.3d 946, 954 (7th Cir. 2001) (quoting *United States v. Johnson*, 227 F.3d 807, 814 (7th Cir. 2000)).

court was correct to impose the enhancement."[21]  Accordingly, the district court did not clearly err in applying the § 2D1.1(b)(1) enhancement.

**B**

We next consider the premises enhancement.  Under U.S.S.G. § 2D1.1(b)(12), a sentencing court shall "apply a two-level sentence enhancement '[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.'"[22]  "Although manufacturing or distributing need not be the sole purpose for which the premises is maintained, it must 'be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises.'"[23]

Castro does not argue that he did not "maintain" the premises. Rather, Castro argues he did not do so "for the purpose of manufacturing or distributing" given that "no drugs were recovered at the apartment[,] nor does any indication exist that drugs were ever stored on the premise[s].  No drug transactions were assumed to have taken the apartment . . . .  [And n]o drug paraphernalia . . . was recovered at the apartment."  The district court "agree[d]" that "storing proceeds is part and parcel to [] distribution."  It was not clear error for the district court to find the act of storing drug proceeds falls within an expansive view of "distributing," since Castro would have necessarily taken the proceeds back from drug sales to the apartment in

---

[21] *Id.*; *see also United States v. Juluke*, 426 F.3d 323, 328 (5th Cir. 2005) (upholding § 2D1.1(b)(1) enhancement where "[t]he loaded weapons at issue were found in the same home as the cash, and one was found in the same closet as a portion of the cash").

[22] *United States v. Eustice*, 952 F.3d 686, 691-92 (5th Cir. 2020) (quoting § 2D1.1(b)(12)).

[23] *Id.* at 692 (quoting § 2D1.1(b)(12) cmt. n.17).

order to store them there. [24] Given Castro's admissions that the money and jewelry "were the proceeds" of his drug trafficking, and the apartment was used "in furtherance of his drug trafficking activities," the district court did not clearly err in applying the enhancement.

Castro further argues that "[t]he storage of drug proceeds at the apartment [was] nothing more than an incidental or collateral use for the premises" and therefore not a "primary or principal use[]." At sentencing, Castro asserted that "this premises was used for no more than habitational-type purposes." However, the apartment was not Castro's residence. He resided at a house in northwest Houston. The apartment was rented in a woman's name. There were only a few items of Castro's clothing in the apartment and no women's clothing. It was sparsely furnished, and Castro said he only "stayed there on occasion."

This court's "evidentiary bar for establishing a primary use 'has not been set high,'" [25] and we have repeatedly held that the "residential quality of the premises cannot shield [a defendant] from this enhancement." [26] For instance, we have upheld the premises enhancement where the defendant "lived in the premises and raised his family there for thirty-five years" because the defendant "stored drugs in his garage" for a "couple of hours"

---

[24] *See, e.g.*, *United States v. Carrillo*, 689 F. App'x 334, 335-36 (5th Cir. 2017) (noting the district court could consider "the over $12,000 in drug proceeds also stored" in a garage to apply the § 2D1.1(b)(12) enhancement); *United States v. Rodriguez*, No. 20-10862, 2021 WL 6101371, at *1 (5th Cir. Dec. 21, 2021) (noting "over $23,000 in cash concealed in a cereal box and behind a dresser drawer" supported the finding that distribution was a primary purpose of the premises).

[25] *United States v. Galicia*, 983 F.3d 842, 844 (5th Cir. 2020) (quoting *United States v. Fonseca*, 834 F. App'x 75, 79 (5th Cir. 2020)).

[26] *Id.*

on "three occasions over a two-and-a-half-year period."[27]    Here, the residential nature of the apartment is even less, as Castro only "stayed at the apartment from time to time."  The large amount of cash—more than one million dollars—and jewelry worth approximately a quarter of a million dollars, indicate that a principal use of the apartment was the storage of what were admittedly proceeds from drug trafficking.  "Given the low bar for establishing a primary use for a premises,"[28] the district court did not clearly err in finding storing proceeds was a primary use of the premises.

Finally, Castro argues his admission is "merely a conclusory statement purporting to be a legal conclusion rather than evidence to support the enhancement."  Castro contends that "[i]t is reversible error to rely on 'a single, conclusory statement in the factual basis' to support an enhancement, without additional evidence."  Castro bases this assertion on *United States v. Le*.[29]  In *Le*, the district court applied the § 2D1.1(b)(12) enhancement based on the defendant's admission that "he and [a co-conspirator] did unlawfully and knowingly *use and maintain* [the] motorcycle shop . . . for the purpose of distributing and using methamphetamine."[30]  In finding that the district court erred by relying on this statement, we stressed the ambiguity of the admission: "[W]hen Le admitted the factual basis, he may have 'admitted' one of a number of possible 'and/or' permutations— including that [the co-conspirator] *maintained*, while Le only *used*, the shop as a drug premises."[31]  No such ambiguity is present here.  Further, we

---

[27] *Id.* at 844-45.

[28] *Id.* at 845.

[29] 126 F.4th 373 (5th Cir. 2025).

[30] *Id.* at 377 (second alteration and omission in original).

[31] *Id.*

observed in *Le* "that no Fifth Circuit case holds that a district court clearly errs in applying a sentencing enhancement based solely on a defendant's admissions."[32]

JUDGE DENNIS's dissenting opinion in the present case advances an argument similar to the expressio unius canon of construction, maintaining that the phrase "including storage of a controlled substance" necessarily implies the exclusion of "storage of proceeds" from the meaning of "distribution."[33] But "[t]he force of any negative implication" under expressio unius "depends on context."[34] "These two inquiries are therefore helpful: '(1) Whether the statutory text communicates exclusivity, and (2) whether the included term goes hand in hand with the missing term, allowing the inference that the omission has interpretive force."[35] Here, the text of the comment in the Guidelines does not indicate exclusivity because "including" is illustrative rather than exhaustive.[36]

The premises enhancement is designed to impose consequences on those who "maintain[] a premises for the purpose of . . . distributing a controlled substance."[37] Castro was the supplier in a conspiracy to distribute cocaine. The purpose of a conspiracy to distribute illegal drugs is to obtain

---

[32] *Id.* at 380.

[33] *See post* at 12-13.

[34] *NLRB v. Sw. Gen., Inc.*, 580 U.S. 288, 302 (2017) (quoting *Marx v. Gen. Revenue Corp.*, 658 U.S. 371, 381 (2013)).

[35] *United States v. Vargas*, 74 F.4th 673, 686 (5th Cir. 2023) (quoting *United States v. Cartagena-Lopez*, 979 F.3d 356, 362 (5th Cir.), *reh'g granted*, No.20-40122, 2020 WL 13837259 (2020).

[36] *Cf. Doe v. SEC*, 28 F.4th 1306, 1314 (D.C. Cir. 2022) ("Notably missing from the regulations are words or phrases indicating that the three listed fact patterns are merely illustrative—for example, . . . 'including.'").

[37] U.S.S.G. § 2D1.1(b)(12).

No. 24-40621

proceeds.   Storing drug proceeds is an integral part of "distributing a controlled substance."[38]

Accordingly, the district court did not err in applying the premises enhancement.

\* \* \*

For the foregoing reasons, the district court did not clearly err in applying either the U.S.S.G. § 2D1.1(b)(1) firearm enhancement or the U.S.S.G. § 2D1.1(b)(12) premises enhancement.   Because we find no clear error, we do not reach the question of whether the "objection raises no more than harmless error."[39]   We AFFIRM Castro's sentence.

---

[38] *Id.*

[39] *United States v. Giglio*, 126 F.4th 1039, 1047 (5th Cir. 2025).

No. 24-40621

James L. Dennis, *Circuit Judge*, concurring in part and dissenting in part:

I agree with the majority that the district court correctly applied the U.S.S.G. § 2D1.1(b)(1) firearm enhancement in sentencing Rodney Ignacio Castro. But I respectfully disagree that the same is true with respect to the premises enhancement under § 2D1.1(b)(12). That enhancement applies only where a "defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." Consequently, we have *never* upheld the enhancement absent evidence that the defendant actually maintained the identified premises to manufacture, distribute, or store a controlled substance. The majority breaks from that practice by treating Castro's bare admission that he used his downtown Houston apartment "in furtherance of his drug trafficking activities," combined with the presence of drug proceeds and a firearm there, as sufficient. Because such evidence is insufficient under the plain language of § 2D1.1(b)(12) and our precedent, I respectfully concur in part and dissent in part.

\*  \*  \*

Section 2D1.1(b)(12) provides for a two-level sentencing enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." The commentary explains that the enhancement "applies to a defendant who knowingly maintains a premises . . . for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." § 2D1.1(b)(12) cmt. n.17. Although this "need not be the sole purpose for which the premises was maintained," it must be "one of the defendant's primary or principal uses for the premises," not merely "incidental or collateral." *Id.*

The district court acknowledged that investigators found neither drugs nor drug paraphernalia in Castro's downtown Houston apartment.

12

Nevertheless, it applied § 2D1.1(b)(12) based on the presence of drug proceeds and a firearm, and on Castro's admission in the factual basis that he used the apartment "in furtherance of his drug trafficking activities":

> Mr. Castro admitted that he -- the apartment [in downtown Houston] was used in furtherance of his drug trafficking activities, which **could be drugs**, proceeds, guns. ***He had his proceeds and guns there. We don't know what he had at other times. I don't know.*** That's -- when the search warrant was executed, that's what was found, but he admitted it in the factual basis.

The court further "agree[d]" with the Government that "storing proceeds is part and parcel to the distribution." The majority affirms on the view that storing drug proceeds fits within an "expansive" notion of "distributing" because "Castro would have necessarily taken the proceeds back from drug sales to the apartment in order to store them there." *Ante*, at 7–8. Thus, according to the majority, "the district court did not clearly err in finding that *storing proceeds* was a primary use of the premises." *Id.* at 10 (emphasis added).

That holding cannot be squared with the plain text of § 2D1.1(b)(12). The guideline and its commentary expressly require manufacture, distribution, or storage of "*a controlled substance*," not proceeds. § 2D1.1(b)(12) & cmt. n.17 (emphasis added). Proceeds are not a controlled substance, and treating the storage of proceeds as dispositive of controlled substance "distribution" rewrites the enhancement and elides the distinction drawn by our own precedent.[1] We have long required direct

---

[1] The majority's rebuttal—that § 2D1.1(b)(12) is not confined to controlled substances—cannot be reconciled with the Guideline and commentary's plain text. *Ante* at 10–11. The Guideline applies only where "the defendant maintained a premises for the purpose of manufacturing or distributing *a controlled substance*[.]" § 2D1.1(b)(12) (emphasis added). The commentary reinforces that limitation: "Subsection (b)(12) applies

evidence—drugs, paraphernalia, or transactions at the site—from which a court may infer that the premises was maintained for drug manufacturing, distribution, or storage. *See United States v. Benitez*, 809 F.3d 243, 250 (5th Cir. 2015) (defendant "received drug deliveries" and investigators recovered an air-breathing mask, a cutting agent, and a metal strainer "in addition to the drugs themselves" at the premises); *United States v. Rodney*, 532 F. App'x 465, 473 (5th Cir. 2013) (defendant accessed a shed "[i]mmediately" before two crack cocaine sales, supporting the inference the shed was maintained at least temporarily to store and package drugs). Where we have relied on cash or firearms, the record likewise contained evidence of drugs or drug paraphernalia at the premises. *See United States v. Carrillo*, 689 F. App'x 334, 335–36 (5th Cir. 2017) (mem.) (a "large quantity of methamphetamine" and "methamphetamine residue" were found at defendant's premises, along with over $12,000 in proceeds); *United States v. Fonseca*, 834 F. App'x 75, 79 (5th Cir. 2020) (defendant stopped en route to his residence with 9.94 kilograms of cocaine and $318,659 intended to be stored there); *United States v. Pardo-Oseguera*, 844 F. App'x 739, 740 (5th Cir. 2021) (defendant's

---

to a defendant who knowingly maintains a premises . . . for the purpose of manufacturing or distributing *a controlled substance*, including storage of *a controlled substance* for the purpose of distribution." *Id.* cmt. n.17 (emphasis added).

The throughline? A controlled substance. By expanding the Guideline's plain language to encompass the mere storage of proceeds by means of a tortured syllogism, the majority effectively reads the controlled substance limitation out of the Guideline and its commentary. And unsurprisingly, our precedent upholding the enhancement has always emphasized evidence tying the premises to contraband or drug transactions. *See, e.g.*, *United States v. Ajayi*, 64 F.4th 243, 250 (5th Cir. 2023) (distribution of illegally prescribed controlled substances); *United States v. Guzman-Reyes*, 853 F.3d 260, 264–65 (5th Cir. 2017) (storage of methamphetamine); *United States v. Rico*, 864 F.3d 381, 384 (5th Cir. 2017) (same); *United States v. Romans*, 823 F.3d 299, 321 (5th Cir. 2016) (storage and distribution of marijuana).

residence contained "more than 400 grams of methamphetamine" along with "drug paraphernalia and a firearm").

The record here contains no such evidence and, until today, we have been "skeptical" of inferring prior drug storage from the mere presence of cash and firearms at a residence even where drugs intended for distribution were also present. *United States v. Rodriguez*, 707 F. App'x 224, 227 (5th Cir. 2017). We have extended that same skepticism to cases involving far more egregious facts than those offered to support Castro's sentencing. *Cf. United States v. Lopez*, 750 F. App'x 349, 352–53 (5th Cir. 2018) (acknowledging application of the enhancement was "a close factual question" where premises contained over 400 kilograms of marijuana, multiple Xanax pills, drug paraphernalia, firearms, and ammunition, as well as the district court's credibility finding that drugs were sold from the residence).

Nor does Castro's generalized admission that he used his apartment "in furtherance of his drug trafficking activities" carry the day, which is confirmed by our recent holding in *United States v. Le*, 126 F.4th 373 (5th Cir. 2025). There, the premises enhancement rested on a defendant's admission that he "unlawfully and knowingly use[d] and maintain[ed]" a motorcycle shop as a drug premises. *Id.* at 377, 379. Faced with a "sparse factual record," we held that this bare factual-basis statement could not plausibly support that the defendant "maintained" a drug premises where "it [was] not even clear what [the defendant] admitted." *Id.* at 380. The Government and the district court had read "use" and "maintain" as interchangeable; the indictment and factual basis spoke in "use and maintain" terms, but the supporting narrative—and the surrounding evidentiary record—pointed only to use, not maintenance. *Id.* We warned that leaning on that equivocal phrasing would "overlook[] much of the factual narrative" and an evidentiary record that "militates to the contrary." *Id.* And "given the dearth of other evidence" that the defendant actually maintained the shop, we reversed because the

enhancement rested "solely on a single, conclusory statement" in the factual basis. *Id.* at 381.

That reasoning applies here. Castro's statement that he used his apartment "in furtherance of his drug trafficking activities" is even more equivocal than the defendant's admission in *Le* that he "used and maintained" the premises. "In furtherance of" could refer to many incidental or collateral uses such safeguarding drug proceeds, which the evidence supports was Castro's use of the Houston apartment. He did not admit he "maintained" his apartment for manufacture, distribution, or storage "of a controlled substance," *see* § 2D1.1(b)(12), and reading "in furtherance of" to do that work "requires overlooking much of the factual narrative itself." *Le*, 126 F.4th at 380.

If anything, the record favors the conclusion that Castro's downtown Houston apartment was incidental to, not the locus of, his drug trafficking activities. The factual basis describes two drug transactions involving seventeen kilograms of cocaine where investigators watched Castro leave his "residence" on "Briarcliff" Drive to meet prospective buyers. It also recounts several of his multi-kilogram deliveries to a designated "stash house" on "Great Oaks" Drive. Nothing ties those transactions or deliveries to the downtown apartment on "Texas Avenue." What links exist instead reasonably suggest that Castro's distribution operations were centered elsewhere, while the Houston apartment contained only proceeds and a firearm. Given the sparsity of the record, the ambiguity of Castro's statement, and alternative inference more directly supported by the evidence, *Le* instructs that the district court's reliance on his single conclusory admission cannot carry the application of § 2D1.1(b)(12) alone. *See id.* at 380–81.

No. 24-40621

At bottom, the Government's proffer is insufficient to show that Castro maintained the apartment to manufacture, distribute, or store a controlled substance, and the record is devoid of drugs, residue, paraphernalia, or transactions at that location. Because I would find that § 2D1.1(b)(12) does not apply and would vacate Castro's sentence and remand for resentencing on this limited basis, I respectfully concur in part and dissent in part.